TUCKER, APPELLEE, *v.*
KRITZER ET AL., APPELLANTS.

(No. 17-86-33—Decided
October 27, 1988.)

*Norman P. Smith,* for appellee.
*William R. Zimmerman,* for appellants.

COLE, J. This is an appeal from a judgment of the Sidney Municipal Court whereby that court rendered judgment for the appellee, Vicki Tucker, upon a claim for damages for the sale, by appellants, to the appellee, of a residence containing a defective or inadequate chimney used for wood-burning stoves.

The appellants, Norma R. Kritzer et al., assign a single assignment of error:

"The decision of the trial court is contrary to law and against the manifest weight of the evidence."

As to this, we first note the requirements of Local Rule 7(B) of the Third Appellate District:

"Assignments of error, to the degree reasonably possible, should not be general in terms but should be specifically applied to the error claimed. A general assignment of error that 'the judgment is contrary to law' will be disposed of adversely to the appellant for failure to be specific."

This assignment of error is entirely general and neither indicates why the judgment of the trial court is contrary to law, nor why and in what particulars it is against the manifest weight of the evidence. Under the rule we could therefore peremptorily dismiss this appeal for failure to appropriately prosecute. However, the argument submitted is quite short and consists in essence of a single contention embodying a single issue, *i.e.,* that the trial court failed to appropriately apply the doctrine of *caveat emptor.* Because of the simplicity of appellants' contention, we shall proceed to consideration of the merits of the appeal.

Quite briefly the appellants listed a house with a certain broker, specifying in the listing that the "[h]ome has place for wood-burning stove." The appellee was particularly desirous of purchasing a home with a wood-burning stove as she wished to economize on heating bills and had available, through family connections, a continuing supply of wood. On being shown the house by a real estate agent, appellee saw a wood-burning stove in place, connected by appropriate piping to a chimney outlet in the center of the house. The agent testified:

"The question that arose there at the time we were showing it [*sic*]. She was concerned that she could put a wood-burning stove in and one thing she was going to check with her insurance company to make sure that this would work out okay and I think it was dealing with would the walls be properly over would the stove be sitting far enough away from the wall and so on like that I think. That was the main thing that she was concerned whether they would be able to put a wood-burning stove in there."

Opal Mazingo, who was the grand-

mother of the appellee's husband, testified:

"Q. Did you observe a wood-burning stove in the living room?

"A. Yes I did.

"Q. Okay did you have occasion to inspect it?

"A. The wood-burning stove?

"MR. SMITH: Yes.

"A. Well I just looked at it and see it sitting there and seeing it had been used."

Opal Mazingo also testified as follows:

"Q. Okay were there any questions asked of Mrs. Kritzer [one of the sellers] or anyone else at that closing?

"A. Yes, I asked them about the DPL [Dayton Power & Light Co.] how much the heat bills was and told them that these kids have big DPL bills they cannot pay a big house payment and they said with the wood-burning stove the heat wasn't very much."

Further, Mr. Echeman, husband of the appellee, testified:

"A. It had been used. There was soot in the stove there is soot up around the top of the chimney. You can see that it was a working stove it had been used. There was probably 2 or 3 wheel-barrel loads of soot beside the house where somebody couldn't carry it out to the back of the house.

"Q. Who told you that it was a working stove though?

"A. The it was there to be seen."

After purchase, appellee learned that this stove was connected to a gas flue and not to a chimney properly constructed in accordance with building code requirements and, hence, was unusable without substantial reconstruction. It was the cost of this reconstruction which constituted the judgment for damages.

The appellant sellers now contend that the doctrine of *caveat emptor* should have barred recovery. This somewhat aged doctrine has been recently restated and perhaps revitalized by the Supreme Court in the case of *Layman* v. *Binns* (1988), 35 Ohio St. 3d 176, 519 N.E. 2d 642, wherein the syllabus reads:

"The doctrine of *caveat emptor* precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. (*Traverse* v. *Long* [1956], 165 Ohio St. 249, 59 O.O. 325, 135 N.E. 2d 256, approved and followed.)"

In the case we are here considering both items two and three appear to be present. The testimony shows no impediment to inspection by the potential purchaser and, at trial, the appellee withdrew her claim for fraud. This narrows consideration to item one, *i.e.,* was the condition of the chimney open to observation or discoverable upon reasonable inspection. All three elements must concurrently occur to make the defense available to the sellers; if this element is missing, then the defense was unavailable. The trial court so determined and in our consideration of the transcript of the evidence we arrive at the same conclusion.

Although some question was raised in the mind of the purchaser as to the stove, these considerations were directed to the location of the stove relative to the walls of the room in which the stove was situated. The actual defect which is central to this claim is the defective non-code chimney. The evidence is clear that this condition was not observable without, in part, dismantling the stove pipe and the chimney connection. So far as we can ascertain from the testimony, there was no exterior manifestation of

this defect and, hence, no observable sign of the structural defect here involved. Reasonable inspection would include only eye observation in the absence of some exterior sign of a latent defect and, here, eye observation alone would not reveal the problem. To require a prospective purchaser to dismantle any and all chimney connections by dismantling the structure we believe would be most unreasonable. Similarly, no one would be expected to take apart all electric wall outlets to inspect for compliance with the electrical code in the absence of some exterior and readily observable sign of hidden difficulty.

We conclude that the defect of which complaint was made was latent, *i.e.*, concealed from normal observation, and that reasonable inspection did not require disassembly of the chimney connection.

We, moreover, despite appellee's waiver or withdrawal of a fraud claim, believe there still exists a basis for finding misrepresentation. Although there was no overt verbal misrepresentation as to the condition of the chimney, nevertheless, there existed a situation either created by the sellers or allowed by them to exist, which even more loudly than words proclaimed that the house was properly constructed for the use of a wood-burning stove.

In the first place, the listing specifically said this. In the second place, such a stove was clearly in place and installed, an overt but silent demonstration of the suitability of the house for this mode of heating. In the third place, the conception embodied in the contract of sale, which in the property description said "including wood stove," taken together with the other items noted, constitutes an overt affirmation of the suitability of the chimney for use with a wood stove. Although not amounting to fraud, nevertheless, these items taken together amount to a perhaps unintentional representation sufficient to eliminate the need for further inquiry by the purchaser. In 80 Ohio Jurisprudence 3d (1988) 44, 44-45, Real Property Sales & Exchanges, Section 25, it is stated:

"* * * The rights of the purchaser do not rest upon the ground of fraud, actual or constructive, but upon the ground that, to the extent of the difference in value between the property as it was represented to be and the property conveyed, there is no consideration for his promise. He cannot, upon any principle of law or equity, be compelled to pay for what the vendor did not own, and could not convey. The maxim 'caveat emptor' does not apply to such representations, upon which the purchaser under the circumstances has a right to rely, and in reference to which he is guilty of no negligence." (Footnote omitted.) See, also, *Foust* v. *Valleybrook Realty Co.* (1981), 4 Ohio App. 3d 164, 4 OBR 264, 446 N.E. 2d 1122.

We conclude that the defense of *caveat emptor* was properly eliminated by the trial court and that the assignment of error in both its assertions is not well-taken.

*Judgment affirmed.*

MILLER and EVANS, JJ., concur.