**Koester v. Rule**
*[Cite as 8 AOA 131]*

*Case No. 4-89-10*
*Defiance County, (3rd)*
*Decided December 19, 1990*

*Eric A. Mertz, 901 Ralston Avenue, Defiance, Ohio 43512, for Appellant.*

*James S. Borland, 505 Fourth Street, Defiance, Ohio 43512, for Jan and Jessica Rule.*

*William H. Bracy, 4127 Monroe Street, Toledo, Ohio 43606, for Yoders Realty Inc.*

MILLER, J.

These are appeals by plaintiffs-appellants, Gary Koester, and Sylvia Koester from two judgments of the Court of Common Pleas of Defiance County in the first of which the court granted a motion for summary judgment for defendants-appellees, Jan Rule and Jessica Rule and in the second of which the trial court overruled plaintiffs-appellants' subsequent Civ. R. 60(B) motion to vacate judgment. Plaintiffs-appellants' Civ. R. 60(B) motion was filed as a result of newly discovered evidence which allegedly demonstrated fraud on the part of defendants-appellees.

These appeals have been consolidated in this court for the purpose of briefing and oral argument.

As in all motions for summary judgment, the inferences from the facts alleged and presented must be construed in light most favorable to the party opposing the motion. *Williams v. First United Church of Christ* (1974), 37 Ohio St. 2d 150. Therefore, the following is a statement of the facts as this court sees such facts when construed most favorably for plaintiffs-appellants.

In July, 1986, plaintiffs-appellants purchased a home located at 1973 Sherwood Drive, Defiance, Ohio, from defendants-appellees. This house is located in a housing development known as Sherwood Forest. Also named as defendants in the underlying action were Yoder's Realty, Inc. and Larry Yoder, who acted as the agent for the Rules in the sale. Larry Yoder and Yoder Realty Inc., have since been dismissed from these appeals.

Prior to the closing of the sale the Koesters viewed the house two times in the presence of Larry Yoder. The Koesters pointed out cracks in the south wall of the living room and in the dining room, but were assured by Mr. Yoder that they were just plaster cracks and of no problem whatsoever. They also expressed concern over a patched crack in the garage floor, but again were assured by Mr. Yoder that the crack had been properly fixed and would pose no further problem. (Gary Koester Deposition, pp. 19-21). The Koesters were never informed of any problems with the foundation of the house.

In addition to the cracks pointed out during the inspection of the house, subsequent to the purchase of the residence, plaintiffs-appellants discovered other cracks, including some in a corner which had allegedly been hidden by a flower arrangement. Shortly after moving in, they fixed several of these cracks, but they began to reappear after a year. (Gary Koester Deposition, pp. 28-29). As time went on, more cracks began to appear and problems developed in opening and shutting windows and doors. In March, 1988, the Koesters discovered a crack running through the middle of the house while remodeling the bathroom. They also noticed at that time that it appeared that the carpet had been replaced directly over this crack. (Gary Koester Deposition, pp. 38-45). They discovered still more cracks when they repapered and repaneled the office area of the home. (Gary Koester Deposition, p. 46).

Further investigation revealed that concrete had been poured on the outside of the house at the southwest and northwest corners which was covered by dirt and mulch. This concrete made contact with and was immediately adjacent to the foundation. (Ronald Flory Deposition, pp. 26,27).

As a result of these findings, the Koesters filed a complaint against the Rules, Larry Yoder, and Yoder Realty, Inc., alleging that the defendants (1) failed to inform them of structural damage to the home, (2) misrepresented the condition of said house, (3) concealed the structural problems, (4) were guilty of negligent misrepresentation, and (5) violated the Consumer Sales Practices Act.

During discovery, Jan Rule stated in his deposition that the only defect of which he was aware was the crack in the garage floor, and that it had been fixed. He further said that he had no doubt that the house was in good condition at the time of the sale in 1986 and that there was no crack in the slab of the house. (Jan Rule Deposition, pp. 19, 31).

Mr. Rule admitted he was aware that many of the homes located in the Sherwood Forest housing development had structural problems, in large part due to the clay soil on which the homes were built. (Jan Rule Deposition, pp. 17, 18). The soil would shrink as much as 12 inches at a time, and Mr. Rule said his lawnmower would sometimes drop into boles created at the

side of the house, (Jan Rule Deposition, pp. 11, 15) and Mrs. Rule stated that sometimes their children would trip and fall as a result of the holes. (Jessica Rule Deposition, p.7). Mr. Rule also admitted that doors and windows would get tight as they would shrink or swell. (Jan Rule Deposition, p. 35). The Koesters were not informed of this condition prior to their move. (Jessica Rule Deposition, p. 11).

In support of defendants-appellees, contentions that there were no structural problems in 1986 when they sold the house, they submitted the deposition of James Birk, a contractor, who had inspected the house in 1985 and found no problems. They also denied covering up cracks in the walls and floors with flower arrangements, carpet, wallpaper, or panel.

Based on the above facts and allegations, the trial court, on June 8, 1989, granted defendants-appellees' motion for summary judgment, noting the following findings of fact in its judgment entry:

"(1) That Larry J. Yoder and Yoder Realty, Inc. were the agents of Defendants, Jan Rule and Jessica Rule, regarding any representations which Larry Yoder may have made to the Plaintiffs;

"(2) That none of the Defendants had any knowledge of any latent defects in the foundation of said premises prior to the sale of the same to the Plaintiffs. In fact, an expert had dug down and inspected portions of the foundation at the time he repaired the crack in the concrete floor of the garage approximately a year prior to the time that Plaintiffs purchased said real estate and concluded and testified that the problem with the facing on the front walls of the building was that there was not sufficient foundation ledge under said facing to support the same and that he had the same corrected by pouring additional concrete against the foundation upon which said facing could rest. He further testified that he excavated the soil in other places around the foundation and there were no structural defects which he could detect in the residence at that time other than those which he had corrected. The Defendants' expert, Mr. Birk, who has a Master's Degree in Earth Sciences and thirty hours beyond that on his PHD, further testified, and this testimony is unrefuted, that the problems which Plaintiffs are complaining about arose from the extreme drought of 1988 which caused the soil around the outside of the foundation to shrink and pull away from the foundation and at the same time the hydrolic (sic) pressure from the damp soil on the inside of the foundation pushed against the foundation causing it to move.

"(3) There is no evidence that anything was wrong with the foundation of this home or that there were any other latent defects in the home at the time Plaintiffs purchased the same from the Defendants, Mr. and Mrs. Jan Rule, in 1986.

"(4) Prior to the purchase of the home, the Plaintiffs, did two thorough inspections, found all patent defects, being small cracks in the plaster with the exception of one, which they claim the Defendants hid by placing some flowers in front of the defect. There is no evidence that the Defendants placed the flowers in the location near the foot of the stairs in the living room to hide that defect. Furthermore, the Plaintiffs could easily have inspected this space behind the plant to discover that minor crack.

"(5) The Plaintiffs were aware that there were soil problems in this area and in fact discussed that matter with Realtor Yoder. Mr. Yoder informed the Plaintiffs that in order to prevent the shifting of the foundation when the ground was dry, they should keep the soil around the foundation wet. This they failed to do prior to and during the drought of 1988 as Gary Koester testified he would turn the sprinkler on and when he would leave, his wife would turn it off.

"(6) The only evidence in this case of any misrepresentation made by Mr. Yoder was the testimony of the Plaintiffs that Mr. Yoder told them the cracks in the plaster were just plaster cracks and they were nothing to worry about. However, there is no proof whatsoever that the statement was not a statement of fact at the time it was made.

"(7) Ohio Revised Code Sections 1345.02 and 1345.03 do not govern the sale of a residence where the seller is not the builder. Assuming that is (sic) does cover this transaction, there is no evidence of any violation of the terms of said Sections being unconscionable acts or practices in connection with the sale."

On June 21, 1989, Mr. Koester learned from one of his neighbors, Michael Shea, that Robert Beck of Beck's Construction had been asked to look at Mr. Rule's house in 1983. At that time, Mr. Beck was in the process of building Mr. Shea's house which is located near the house in question.

Based on this knowledge plaintiffs-appellants filed their 60(B) motion for relief from the summary judgment.

In his affidavit filed in support of the 60(B) motion Mr. Beck stated that a person purporting to be the owner of the house which the Koesters purchased called him over to look at some foundation problems he was having, requesting Mr. Beck to check out these problems and to fix them. He further asked Mr. Beck if he would pour cement at the northwest corner of the house to shore up the foundation. (Robert Beck Affidavit, Exhibit "H").

Mr. Beck stated that his examination of the foundation revealed a crack in the middle of the north end of the house big enough that he could place his hand in the crack. He recalled the owner telling him that the crack ran through the center of the house and that it could be felt underneath the carpet. (Robert Beck Affidavit, Exhibit "H"). The owner also showed Mr. Beck foundation problems at the northeast and east part of the house where the foundation had substantially moved from the plate above it. (Robert Beck Affidavit, Exhibit "H").

Based on the above, Mr. Beck concluded that there was no doubt that the owner knew he had a substantial problem with his foundation prior to the sale of the house to the Koesters. (Robert Beck Affidavit, Exhibit "H"). This evidence contradicts statements made by Jan Rule in his deposition in which he denied knowing anything about a crack running through the middle of the house or of structural problems prior to the sale in July, 1986.

Defendant-appellees argue that the affidavit signed by Mr. Beck was not properly sworn to and thus should not be used in support of the motion, a conclusion with which the trial court concurred. However, in the Civ. R. 60(B) hearing before the trial judge during which Mr. Beck was under oath, when asked whether the contents of the affidavit were correct he answered to "the best of my knowledge, yes." (Transcript, p. 74). Additionally, we find no apparent discrepancies between the contents of the affidavit and Beck's testimony in the hearing transcript.

In the trial court's Findings of Fact and Conclusions of Law, filed on July 17, 1989, the court found in part that:

"As to Jan Rule and Jessica Rule, Plaintiffs' claim of fraud on the part of the Rules is unfounded. Simply because they have evidence now contrary to the testimony of Jan Rule regarding the crack in the concrete slab that ran through the house is not a showing of fraud on the part of the Defendants in obtaining the judgment."

The court additionally decided that the claim of newly discovered evidence would not be accepted since the Koesters should have asked their neighbors whether they had any information pertinent to the lawsuit long before the case originally came to trial.

Plaintiffs-appellants appeal from the above judgments of the trial court, making the following two assignments of error:

"Assignment of error number one.
"THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-APPELLEES MOTION FOR SUMMARY JUDGMENT.
"Assignment of error number two.
"THE TRIAL COURT ERRED IN OVERRULING THE PLAINTIFF-APPELLANTS MOTION FOR RELIEF FROM JUDGMENT."

It is well established law in Ohio that:

"[t]he principle of caveat emptor applies to sales of real estate relative to conditions open to observation. Where those conditions are discoverable and the purchaser has the opportunity for investigation and determination without concealment or hindrance by the vendor, the purchaser has no just cause for complaint even though there are mistatements and misrepresentations by the vendor not so reprehensible in nature as to constitute fraud." *Traverse v. Long* (1956), 165 Ohio St. 249, at 252. This doctrine has been limited "to circumstances where there are no latent defects in the property and the conditions in question are open to observation." *Sanfillipo v. Rarden* (1985), 24 Ohio App. 3d 164, at 167. Regarding a purchaser's duty to inspect, *Sanfillipo* stated that "any duty of inspection may be held to terminate at the point when representations have been made with respect to a material fact in direct response to a purchaser's inquiry." *Id.*

*Bowlds v. Smiths* (1961), 114 Ohio App. 21, at 27, dealt with this same issue and held the following:

"The vendee is chargeable with knowledge of all things which a normal inspection under the circumstances would reveal, and as to defects either known or which should have been known by a proper inspection, such defects are waived. As to such defects, whether the vendee has knowledge thereof and whether the defects were patent or latent are questions on genuine issues of fact for the jury under proper instruc-

tions of the court ... Whether the defendant has knowledge of a material fact which he failed to disclose to the plaintiff is a matter for the jury."

The state of law on this matter was further clarified by the Ohio Supreme Court in *Layman v. Binns* (1988), 35 Ohio St. 3d 176, at 177, where the following test was set forth to determine if caveat emptor precludes recovery:

"(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the full and unimpeded opportunity to examine the premises, and (3) there is no evidence of fraud on the part of the vendor." See also *Tucker v. Kritzer* (1988), 54 Ohio App. 3d 196, at 198, where this court applied the *Layman* test.

The first assignment of error made by plaintiffs-appellants must be considered without the testimony of both Beck and Shea, as such testimony was proferred after the summary judgment was granted. As stated earlier, to determine if the summary judgment was appropriate in this situation, we must construe all evidence and allegations most strongly in favor of the non-moving party, plaintiffs-appellants, and if the evidence, allegations and inferences arising therefrom raise genuine issues of material fact, then, summary judgment is not appropriate and the case should go to trial.

*Layman, supra,* dealt with a situation in which the buyer, after inspection, claimed not to have been able to detect the bow in the basement walls or the I-beams which had been erected to support these walls. Although the majority ruled that the doctrine of caveat emptor applied and thus denied the purchasers' recovery, Justice Locher in a separate opinion concurring in part and dissenting in part, stated that:

"In my view, the trial court properly found that the structural defect in the basement wall was not readily apparent upon reasonable inspection by persons inexperienced in such matters ... The observability or discoverability of such a defect is a factual issue best resolved by the trier of fact, who has firsthand exposure to the evidence and can observe the demeanor of the witnesses. This is especially true where there is conflicting testimony, because the trier of fact is best able to evaluate the credibility of the testimony."

It is our opinion, based on the facts and allegations, that valid inferences could be drawn that the latent conditions complained of existed at the time of the sale of the property.

Whether the flower arrangement, carpet, panelling, mulch and dirt over concrete at corners of house, etc., were used to cover up latent defects of which the Rules were aware is a question of fact. Furthermore, a question of credibility exists as to whether the Rules purposely concealed these conditions, a matter reserved for the trier of fact. Therefore, we conclude that the grant of summary judgment was not appropriate and plaintiffs-appellants' first assignment of error is well taken.

In order to overturn a trial court's denial of a Civ. R. 60(B) motion, this court must find that the trial court abused its discretion. See *Doddridge v. Fitzpatrick* (1978), 53 Ohio St. 2d 9, at 12; *State, ex rel. Freeman v. Kraft* (1980), 61 Ohio St. 2d 284; and *Moore v. Emmanuel Training Ctr.* (1985), 18 Ohio St. 3d 64, at 66. In *Doddridge, supra,* the court held that:

"[A] motion to vacate a judgment pursuant to Rule 60(B) is addressed to the sound discretion of the trial court... However, that discretion is not unbridled."

Since we have determined above that the trial court erroneously granted defendants-appellees motion for summary judgment, it is clear that the court abused its discretion in denying plaintiffs-appellants' Civ. R. 60(B) motion, with or without the newly discovered testimony of Mr. Beck. Thus, plaintiffs-appellants' second assignment of error is also well taken.

For the above stated reasons, we hold that the trial court erred in granting defendants-appellees' motion for summary judgment and in denying plaintiffs-appellants' Civ. R. 60(B) motion to vacate judgment. Therefore, both judgments are reversed and this case is remanded to the trial court for further proceedings.

*Judgment reversed.*

SHAW, P.J., and EVANS, J., concur.