DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Farris Disposal, Inc. has appealed from the judgment of the Cuyahoga Falls Municipal Court. We reverse, enter judgment in part, and remand.
 I {¶ 2} Appellant is a private trash removal business. Defendant-Appellee Leipply's Gasthaus, Inc. dba Chuck and Diane's Family Restaurant, fka Leipply's Restaurant, is a restaurant located in Cuyahoga Falls, Ohio, in Summit County. In December 2003, Appellant's sales representative, Beth Comeriato, approached the owner of the restaurant, Diane Hardman, and made certain representations which Appellee has asserted led it to believe that its current trash services provided by the City of Cuyahoga Falls (the "City") were, at some time in the future, going to be cancelled, and that the City would no longer be providing such services for Appellee's business. Thus, on or about December 19, 2003, Appellant and Appellee executed a contract for trash receptacles and trash removal services, to be serviced by Appellant.
 {¶ 3} This contract had a three-year term, and could be terminated at the end of the term by either party. The contract provided for monthly fixed-term payments of $95, and under the contract Appellee would receive two trash receptacles, one four-yard trash receptacle, and one two-yard receptacle. In contrast, the City service provided only one four-yard trash receptacle with its services, at a $96 monthly price. Because the extra two-yard trash receptacle provided by Appellant cost $10, Appellee actually received a savings of $1 per month in monthly payments, and received an extra trash receptacle ordinarily costing $10 essentially free of charge, as compared to the City's services. Thus, the overall savings amounted to $11 per month. Such monthly savings could potentially continue for the life of the three-year contract and protect Appellee from price inflation.
 {¶ 4} In exchange for the economic benefits of the contract to Appellee, the contract contained a "Failure to Perform" clause which included a liquidated damages provision. This provision specifically provided, in pertinent part:
"In the event Customer fails to pay Farris all amounts which become due under this Agreement, fails to perform its obligations hereunder, and Farris refers such matter to an attorney, Customer agrees to pay, in addition to the amount due, any and all costs incurred by as a result of such action, including reasonable attorney's fee [sic]. In the event Customer terminates this Agreement other than as provided above * * *, Customer shall pay Farris as liquidated damages * * *[,] if the remaining term under this Agreement is six or more months, * * * its most recent monthly charge multiplied by six[.]"
 {¶ 5} Appellant delivered its receptacles, but shortly thereafter, Appellee noticed that the City had not removed its receptacle from Appellee's premises. Only then did Appellee contact the City and learn that the City was not canceling services to Appellee. Appellee then terminated the contract with Appellant and told Appellant to remove its receptacles. Appellant complied, and Appellee refused to pay for the month of service it had received from Appellant.
 {¶ 6} In a letter dated January 12, 2004, Appellant's counsel refers to the outstanding balance for the first month's service, but proceeds to request payment of the $570 liquidated damage provision only. Counsel informed Appellee that Appellant would initiate litigation if Appellee did not comply.
 {¶ 7} Appellee made no response. Thus, on February 9, 2004, Appellant filed a complaint for breach of contract, asserting that Appellee failed to pay the balance due and owing under contract, which Appellant quantified by the $570 liquidated damage amount. Thus, Appellant requested payment of $570 in liquidated compensatory damages, and, without asking for the monthly balance due and owing, requested interest, costs, and attorney fees. Appellee answered and counterclaimed. Appellee admitted that the parties had entered into a contract, but generally asserted the defense of fraudulent inducement in its answer, simply stating that the contract was void because of fraudulent representations made by Appellant's agent. In its counterclaim, Appellee again pled fraudulent inducement, requested compensatory damages in the amount of $3,240, representing the monthly service payments for the entire three-year term of the contract, punitive damages in the amount of $5,000, and attorney fees.
 {¶ 8} On July 26, 2004, Appellant filed a motion for summary judgment on Appellee's counterclaim, arguing that since Appellee suffered no actual damages it was not entitled to punitive damages or attorney fees. Appellant also argued that Appellee, an experienced business, had not justifiably relied on anything said by Appellant's agent and had failed to make minimal inquiry into the truth of such representations.
 {¶ 9} The Magistrate denied the motion for summary judgment, concluding, "while Defendant's damages are questionable, all inferences in this regard are to be construed in Defendant's favor." Neither party objected to the Magistrate's decision. However, Appellee voluntarily dismissed its entire counterclaim without prejudice pursuant Civ.R. 41(A) before the trial court could make a decision on the magistrates' recommendation, thus leaving pending its generally pled fraudulent inducement defense. Appellee indicated it would rely on this defense at trial.
 {¶ 10} A bench trial was held on January 26, 2005. On February 16, 2005, the trial court entered judgment in favor of Appellee, finding that Appellee had proven by clear and convincing evidence the affirmative defense of fraudulent inducement, that no contract existed, and that consequently no damages could have arisen.
 {¶ 11} Appellant has timely appealed, asserting two assignments of error for review. We have consolidated the assignments of error for ease of review.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED BY FINDING THAT APPELLEE HAD PROVEN ITS AFFIRMATIVE DEFENSE OF FRAUDULENT INDUCEMENT BY CLEAR AND CONVINCING EVIDENCE, WHICH FINDING AND RESULTING JUDGMENT IN FAVOR OF APPELLEE ARE IN THAT RESPECT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 Assignment of Error Number Two
"THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT JUDGMENT ON ITS COMPLAINT FOR LIQUIDATED DAMAGES, ATTORNEYS FEES AND INTEREST STEMMING FROM APPELLEE'S BREACH OF CONTRACT, AND THE TRIAL COURT'S JUDGMENT IN THAT RESPECT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 12} In its first assignment of error, Appellant has asserted that the trial court's finding of fraudulent inducement on Appellant's part was against the manifest weight of the evidence. In its second assignment of error, Appellant has asserted that the trial court erred in not granting Appellant the relief it sought in its complaint, maintaining that this decision was also against the manifest weight of the evidence. This Court agrees in part, as set forth below.
 {¶ 13} When a party challenges a trial court's judgment as being against the manifest weight of the evidence in a civil case, we apply the same standard of review used in the criminal context. Ray v. Vansickle (Oct. 14, 1998), 9th Dist. Nos. 97CA006897 97CA006907, at 3. Thus,
"The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [verdict] must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
This action is preserved for the exceptional circumstance where the evidence presented weighs heavily in favor of the party opposing the verdict and judgment. State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 14} The following elements must be established in order to establish the defense of fraudulent inducement.:
"`(a) [A] representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.'" (Emphasis added.)Sigma Sales Co. v. dB Sales II, Inc. (May 27, 1998), 9th Dist. No. 18606, at 6, quoting Gaines v. Preterm-Cleveland, Inc.
(1987), 33 Ohio St.3d 54, 55.
To prevail, the defendant must prove each element by clear and convincing evidence. See Sigma Sales Co., at 5.
 {¶ 15} The representations at issue must be more than vague assertions. Spiker v. Aldrich (Apr. 10, 1939), 9th Dist. No. 162, at 5. See, example, Krebs v. Krebs (Sept. 13, 1985), 2d Dist. No. 9173, at *3. Moreover, except where the representation about a future event is known at its making to be false,[1]
"fraud cannot be predicated upon a representation concerning a future event[.]" Snell v. Salem Ave. Assoc. (1996),111 Ohio App.3d 23, 43. See Martin v. Ohio State Univ. Found. (2000),139 Ohio App.3d 89, 98.
 {¶ 16} In the instant case, several witnesses testified as to the representation made by Comeriato to Hardman. Comeriato testified that she informed Hardman that the City was "giving up some of [its] commercial accounts randomly." The Secretary for the superintendent of the City's sanitation utilities department, Marcia Troxell, provided hearsay testimony regarding a complaint which she received about Comeriato from another customer. That customer reported Comeriato as saying, "the City was going out of business" and Appellant would be taking over the city's accounts. Hardman testified that Comeriato told her that "she was working with the City picking up commercial accounts. That [Appellant] would eventually be taking over — she was there to sign [Appellee] up for that."
 {¶ 17} We note, however, that the foregoing assertions are imprecise and vague. They make only generalized references to the City's commercial accounts and to speculative future events with no specific reference to Appellee's account. Such statements do not rise to the level of clear and convincing evidence of fraud. See Sigma Sales, Co., at 5.
 {¶ 18} Furthermore, we find, that, as a matter of law, Hardman was not justified in relying upon Comeriato's representations. In determining whether a party justifiably relied upon a representation,
"[c]ourts consider the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective means and knowledge, as well as other circumstances." Radice Partners, Ltd. v. Angerman (Jan. 16, 1991), 9th Dist. No. 90CA004861, at 10.
This Court has previously held that while a buyer has a right to rely upon representations, Davidson v. Hayes (1990),69 Ohio App.3d 28, 32, such reliance must be justifiable, Sigma Sales,Co., at 8. Thus, a buyer is never entitled to blindly rely upon representations, especially, as in this case, where such representations are vague assertions about future events. No buyer is absolved of the duty to "inquire and inspect" a proposed transaction in a reasonable fashion. Davidson,69 Ohio App.3d at 32. Furthermore, "[w]here the true facts are equally open to investigation by both parties * * *, there is no right to rely on oral representations." Radice Partners, Ltd., at 10. See, also,J.A. Indus., Inc. v. All Am. Plastics, Inc. (1999),133 Ohio App.3d 76, 84 (a party is not justified in relying on representations if "the means of knowledge are readily within his reach.")
 {¶ 19} In the instant case, Comeriato did not assert to Hardman that she (Comeriato) was an official representative or agent of the City. Hardman made no further inquiry into the specifics of the matter, through either the City or Comeriato. Instead, Hardman signed Appellant's contract. See Davidson,69 Ohio App.3d at 32 (party was absolved of its duty to inspect and inquire after asking questions and receiving answers to its questions). It was not until after Hardman signed the contract and noticed that the City had not removed its receptacle that Hardman began to investigate and called the City directly. Such information was certainly readily available to Hardman at the time of her discussions with Comeriato. See Radice Partners,Ltd., at 11; J.A. Indus., Inc., 133 Ohio App.3d at 84.
 {¶ 20} Finally, we address Appellee's assertions as to damages. The parties have essentially agreed that Appellee received an extra trash receptacle for less money from Appellant. Thus, no economic damage arose from entering into the contract. There is no evidence in the record that Appellee objected to, or asserted it did not need, the additional space provided by the Appellant's second receptacle. Nor is there any evidence that Appellant's second receptacle overcrowded the trash area to Hardman's displeasure. To the contrary, Hardman related that during her negotiations with Comeriato, she (Hardman) expressed interest in and would have benefited from having a second receptacle. Indeed, the presumption from the terms of this contract is that the extra receptacle was a bargained-for benefit. The evidence does establish that Appellee failed to check with the City about future City services before entering into the contract with Appellant, and failed to ask the City to remove its receptacle. There is no evidence that Appellee had to pay the City to terminate City services or to reimburse the City for its removal of the City receptacle. In fact, as noted infra the testimony indicates that the City provided trash services on a month-to-month basis with no termination or removal fee.
 {¶ 21} Putting aside the issue of justifiable reliance, we find that as a matter of law that Appellee could not establish damages proximately caused by Appellant in the instant case. The City provided a month-to-month service with one four-yard trash receptacle, for $96 per month, and it would continue to provide such service so long as Appellee chose to use its services. Appellant offered a three year fixed fee contract, with anadditional two-yard trash receptacle, all for less money, i.e., $95 per month. Appellant would provide this financially advantageous arrangement if Appellee signed the agreement at that time. Under this situation, Appellee has not suffered any economic loss. Moreover, notwithstanding the dissent's concern over apparent injustice, the fact that a contract contains liquidated damages or other penalties for breach is irrelevant to the issue of fraudulent inducement.
 {¶ 22} Moreover, the actual evidence and testimony revealed that Appellee would not have incurred any expense as the result of canceling the City's services. The superintendent for the City's Sanitation Division, Robert Leonard, testified that the City did not execute contracts for trash removal services but instead provided this service on a month-to-month basis. He also testified that the City did not penalize a customer for canceling his or her service. Although Appellee asserted that it did not use the receptacles Appellant had delivered to its business, Appellant nevertheless provided the services, which Appellee could have taken advantage of if it chose to do so, and at a lower price.
 {¶ 23} Based upon the foregoing, we find that the judgment was against the manifest weight of the evidence. See Thompkins,78 Ohio St.3d at 387; Martin, 20 Ohio App.3d at 175. See, also,Sigma Sales Co., at 8; Gaines, 33 Ohio St.3d at 55. We are mindful that Appellee is not a Fortune 500 company with all the attendant resources at its fingertips, but neither is Appellant. Moreover, Appellee is also not an inexperienced consumer in the marketplace; rather, Appellee necessarily makes economic, managerial, and other business decisions on a daily basis in running its restaurant business. Thus, we feel compelled, based on the particular facts and circumstances of this case as illuminated above, to conclude that Appellee, as a matter of law, did not prove fraudulent inducement as an affirmative defense by clear and convincing evidence. See Sigma Sales, Co., at 5. To conclude otherwise would potentially proliferate litigation on contracts that were freely entered into. The freedom to contract is a long-standing fundamental right, and we must tread lightly when disregarding the benefits, and responsibilities, that accompany this freedom. Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 9. See, generally, Widlar v.Matchmaker Internatl., 6th Dist. No. L-01-1433, 2002-Ohio-2836, at ¶ 20-21.
 {¶ 24} Appellant's first assignment of error is sustained. Pursuant to our authority under App.R. 12(C), we reverse the judgment of the trial court, and enter judgment in favor of Appellant on its breach of contract claim in the amount of $570 in liquidated damages.
 {¶ 25} As to Appellant's assertion in its second assignment of error that it is entitled to costs and attorney fees under the contract's "Failure to Perform" provision, we observe that this is not necessarily so. We note that there is a distinction between money due for failure to pay the monthly service charge while the contract is ongoing and liquidated damages that ariseafter the contract is terminated. Moreover, the contractual provision itself treats the payment of the monthly fee differently than the recovery of liquidated damages. The sentence describing the recovery of liquidated damages does not provide for costs and attorney fees and clearly indicates that the recovery of liquidated damages is recovery "other than as provided above." In the instant case, a review of Appellant's letter to Appellee and subsequent complaint reveals that Appellant only requested payment of the $570 liquidated damage amount, and not the monthly payment due. Thus, the issue of costs and attorney fees remains a question for the Trial Court to determine. We therefore do not address the merits of Appellant's second assignment of error at this time, and remand the case to the trial court to hold further proceedings to determine the issue of costs and reasonable attorney fees.
 III {¶ 26} Appellant's first assignment of error is sustained. Appellant's second assignment of error is not addressed. The judgment of the Cuyahoga Falls Municipal Court is reversed, judgment is entered in part, and the cause is remanded to the trial court for further proceedings consistent with this decision.
Judgment reversed, judgment entered in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Cuyahoga Falls Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Slaby, P.J., Concurs.
[1] There is no evidence in the record that Appellant or its agent had notice that the City was not contemplating restricting its services to only residential accounts, or to servicing only selected commercial accounts. To the contrary, the testimony of the Superintendent of the City's Sanitation Division, Robert Leonard, directly indicates that the City was getting rid of certain commercial accounts and trading with the company Waste Management for certain residential accounts.