**CURRAN et al., Appellants,**

v.

**VINCENT et al., Appellees.**

[Cite as *Curran v. Vincent,* 175 Ohio App.3d 146, 2007-Ohio-3680.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060521.

Decided July 20, 2007.

</div>

148

Zachary Gottesman, for appellants.

Louis E. Valencia II, for appellees.

MARK P. PAINTER, Presiding Judge.

{¶ 1} The sellers of a home were told that their buyer, who had signed a contract and put down earnest money, had a medical emergency in his family and could no longer afford to purchase the property. The sellers agreed to release the buyer from the contract. But at the same time the buyer claimed distress, he purchased another, more expensive home.

{¶ 2} The sellers sued for fraud, but the trial court granted summary judgment for the buyer on the basis that the sellers were attempting to make a tort claim out of a breach of contract. In our view, there has been a basic misunderstanding of what this case is about. We must reverse.

## I. The Parties

{¶ 3} Because of the complicated nature of this case, we first need to identify the parties and describe their roles.

{¶ 4} Plaintiffs-appellants Carey Bruggeman Curran and her husband, John, were selling their house. The following parties we refer collectively to as "the defendants." Humberto Reyes Garcia agreed to buy the Currans' house. His real estate agent was Esther Vincent, a broker at Wolfer Enterprises, Inc., which does business as Re/Max Unlimited. Garcia obtained his financing from Conny Urteaga–Gerena. (We are uncertain about the spelling of her name. The pleadings spell her given name as both "Conny" and "Connie," and her surname appears as "Urtega," "Urtega–Gerena," and "Urteaga–Gerena." We use "Conny Urteaga–Gerena.") Urteaga–Gerena was a loan officer employed by Interactive Financial Corporation.

## II. The Currans Find and Lose a Buyer

{¶ 5} Carey Curran, a real estate agent with Comey & Shepard, acted as her own agent in selling the house she and her husband owned in Springdale, Ohio, when they put it on the market in May 2003. Seven weeks later, the Currans agreed to sell the property to Garcia for $114,000. Because Garcia spoke only Spanish, he communicated with the sellers through Vincent, his agent, and Urteaga–Gerena, his loan officer, who were bilingual.

{¶ 6} Garcia made his offer on the Currans' home on July 18. The Currans accepted the next day. Garcia paid $500 in earnest money. The following week, Garcia inspected the property and agreed with the Currans on work to be done on the home before the deal closed.

{¶ 7} But the next week, Vincent called Carey Curran to inform her that Garcia could not go through with the purchase because he needed money to help

his ailing father in Mexico. Carey Curran spoke to Urteaga–Gerena about Garcia's changed circumstances. Because of the perceived hardship, the Currans agreed to release Garcia from the contract and to refund his earnest money.

{¶ 8} Garcia signed a release of the sales contract on August 3. Mike Wolfer, president of Re/Max, signed the next day and faxed the release to Carey Curran. She and her husband signed the release on August 5. The Currans then put their property back on the market and sold it in November for $117,900, a higher price than Garcia was to have paid. During oral arguments, we were told that because the completed sale involved Federal Housing Administration loan programs involving subsidies by sellers, the amount netted by the Currans may have been less than what Garcia was to have paid. But the defendants in their pleadings claimed that the completed transaction netted the Currans $374 more than they would have received if Garcia had purchased the home.

{¶ 9} This was an ordinary real estate transaction that had gone sour in an unexceptional way until the Currans learned that the very day Garcia signed the release on the purchase of their house, he had agreed to buy another property. Not only was it also in Springdale, but it was on the same street as the Currans' property. Garcia, again with the help of Vincent and Urteaga–Gerena, bought the second house for $125,000, ten percent more than he had agreed to pay the Currans.

{¶ 10} When the Currans learned this, they were understandably upset and felt they had been misled into releasing Garcia from his purchase contract. They filed suit in 2004, but voluntarily dismissed their complaint in February 2005. In September 2005, they refiled their complaint. The Currans claimed that the defendants had committed fraud. They sought actual and punitive damages, plus attorney fees and costs.

{¶ 11} The defendants moved for summary judgment on two grounds: (1) that fraud was a tort that could not be asserted in a contract action and (2) that punitive damages were not available in a contract action. The trial court granted summary judgment to the defendants. The Currans now appeal.

### III. Summary–Judgment Standard

{¶ 12} We review summary-judgment determinations de novo, without deference to the trial court.[1] Summary judgment should be granted only when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can only come to a conclusion adverse to the nonmoving party,

---

1. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243.

when viewing the evidence in the light most favorable to the nonmoving party.[2] A party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial.[3]

## IV. Contract v. Tort

{¶ 13} The defendants' argument, in the trial court and here, is based on the principle of contract law holding that one cannot pursue both a contract claim and a tort claim arising from a breach of contract. They cite several cases in support of that proposition.[4]

{¶ 14} "In Ohio, a breach of contract does not create a tort claim."[5] This is true even when the "breach was unlawful, wilful, wanton, and malicious."[6] The defendants further argue that there was no legal basis for the Currans' request for punitive damages, noting that it is "settled law" they do not exist in contract law.[7] Although these arguments are, in general, reasonably premised and legally sound, they are irrelevant to this case.

## V. When All Else Fails, Read the Pleadings

{¶ 15} This is *not* an action for breach of contract. This is an action for fraud. There is a reason that the Currans could not have sued on contract grounds. The contract to sell their house was no more; it terminated when they and Garcia signed the release. Thus there could have been no breach of contract by Garcia in failing to purchase the Currans' home because there was no longer a contract to be breached.

---

2. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

3. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

4. *Hallam v. Albertini* (C.P.1954), 72 Ohio Law Abs. 485, 1954 WL 8011 (broken promises are not torts); *Prater v. Three–C Body Shop, Inc.* (Mar. 29, 2002), 10th Dist. No. 01AP–950, 2002 WL 479827; *Osgoodby v. Talmadge* (C.A.2 1933), 67 F.2d 610; *Knepler v. Cowden* (Dec. 23, 1999), 2nd Dist. No. 17473, 1999 WL 1243349.

5. *Textron Fin. Corp. v. Nationwide Mut. Ins.* Co. (1996), 115 Ohio App.3d 137, 150, 684 N.E.2d 1261, citing *Wolfe v. Continental Cas. Co.* (C.A.6, 1981), 647 F.2d 705, 710.

6. *Ketcham v. Miller* (1922), 104 Ohio St. 372, 136 N.E. 145, paragraph one of the syllabus; *R & H Trucking, Inc. v. Occidental Fire & Cas. Co.* (1981), 2 Ohio App.3d 269, 271, 2 OBR 298, 441 N.E.2d 816.

7. *Tibbs v. Natl. Homes Constr. Co.* (1977), 52 Ohio App.2d 281, 290, 6 O.O.3d 300, 369 N.E.2d 1218.

## VI.   The Fraud Accusation

{¶ 16} The Currans alleged that the "Defendants intentionally made fraudulent representations to the Plaintiffs to induce the Plaintiffs to release Garcia from the contract to purchase the [Currans' house]."   The complaint gave the circumstances behind the asserted fraud and alleged fraud with particularity.[8]

{¶ 17} Nowhere in their complaint did the Currans make any contract claims, either under the original sales contract or under the release.   The term "breach of contract" first appeared in the answer and was expanded on in the defendants' motions for summary judgment.   The Currans replied to those motions by restating the fraud claim and relying on a case defining the elements of fraud.[9]

{¶ 18} Fraud is "[a] knowing misrepresentation of the truth * * * to induce another to act to his or her detriment." [10]   The elements of civil fraud are (1) a representation, (2) material to the transaction, (3) made falsely, knowingly, or recklessly, (4) with the intention of misleading another into a justifiable reliance on those facts, (5) that causes the other party injury.[11]

{¶ 19} The tort of fraud was well settled a century and a half ago when the Ohio Supreme Court wrote that "for every fraud or deceit which results in consequential damages to a party, he may maintain a special action [i]n the case." [12]   The Currans' case resembles another case before that court that same December 1846 term where a man falsely claimed to be insolvent to induce a creditor to release him from a note in exchange for property worth less than the value of the note.[13]   The court held that it was proper to instruct the jury that this was a basis for finding fraud.[14]

{¶ 20} These principles remain true today.   Fraudulent or negligent misrepresentations and fraudulent inducements are all valid tort claims.[15]   Fraud

8.   Civ.R. 9(B).

9.   *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709.

10.   Black's Law Dictionary (8th Ed.2004) 685.

11.   *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus.

12.   *Bartholomew v. Bentley* (1846), 15 Ohio 659, 666, 1846 WL 143.

13.   *Edwards v. Owen* (1846), 15 Ohio 500, 505–506, 1846 WL 124.

14.   Id.

15.   *Isaac v. Alabanza Corp.*, 7th Dist. No. 05–JE–55, 2007-Ohio-1396, 2007 WL 901596, ¶ 15.

can lead to both compensatory damages and punitive damages.[16]  "It has long been the rule in our state that '[a] person injured by fraud is entitled to such damages as will fairly compensate him for the wrong suffered.'"[17]  And the Ohio Supreme Court ruled a century ago that reasonable attorney fees are proper in cases of fraud.[18]  Without statutory authorization, bad faith, such as fraud, is generally the only circumstance where attorney fees may properly be awarded.[19]

{¶ 21} That Garcia signed the release of his contract with the Currans, who had been misled by his claim of financial distress, on the very same day that he signed a contract to purchase a second, more expensive house was, in our view, sufficient to create a material issue of fact on the Currans' claim of fraud.  The only evidence in the record, Garcia's deposition, is confusing because it was conducted with an interpreter whose translations were uncertain.  At times it appears that the interpreter was paraphrasing rather than translating, and defendants' counsel, a Spanish-speaker, argued with and discussed the translations with the interpreter at several points.  Clearly what Garcia said, when he said it, and whom he said it to were disputed.  We conclude, therefore, that summary judgment was improperly entered for Garcia.

{¶ 22} We must reverse the entry of summary judgment for Vincent and Urteaga–Gerena for the same reasons.  A party can be held liable for fraud even if she does not know a representation is false.[20]  When statements made "recklessly, and without any knowledge or information on the subject [are] calculated to induce [a] belief, and they are untrue, * * * they are fraudulent."[21]  In other words, "a positive assertion of a fact is, by plain implication, an assertion of knowledge concerning the fact."[22]  What Vincent and Urteaga–Gerena knew and communicated to the Currans was very much at issue.  Their knowledge of Garcia's veracity and their representations to the Currans were material facts.

---

16.  *Roberts v. Mason* (1859), 10 Ohio St. 277, 1859 WL 78, syllabus.

17.  *Burr*, 23 Ohio St.3d at 74, 23 OBR 200, 491 N.E.2d 1101, quoting *Foust v. Valleybrook Realty Co.* (1981), 4 Ohio App.3d 164, 166, 4 OBR 264, 446 N.E.2d 1122.

18.  *Gates v. Toledo* (1897), 57 Ohio St. 105, 111, 48 N.E. 500; see also *Zappitelli v. Miller*, 114 Ohio St.3d 102, 2007-Ohio-3251, 868 N.E.2d 968.

19.  *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 369, 21 O.O.3d 228, 423 N.E.2d 1099; *State ex rel. Chapnick v. E. Cleveland City Sch. Dist. Bd. of Edn.* (2001), 93 Ohio St.3d 449, 452, 755 N.E.2d 883.

20.  *Pumphrey v. Quillen* (1956), 165 Ohio St. 343, 59 O.O. 460, 135 N.E.2d 328, paragraphs one and two of the syllabus.

21.  *Parmlee v. Adolph* (1875), 28 Ohio St. 10, 1875 WL 219, paragraph four of the syllabus.

22.  *Aetna Ins. Co. v. Reed* (1877), 33 Ohio St. 283, 294, 1877 WL 187.

They could not be allowed to make statements to others' detriment and later claim that they were ignorant of the facts or had no duty to investigate what they said; otherwise there would have been an incentive for willful blindness. Summary judgment in their favor—and by extension in favor of Re/Max and Interactive—was also improper.

## VII. Punitive Damages

{¶ 23} Punitive damages require actual malice, which includes "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."[23] As we have already noted, fraud can lead to both compensatory and punitive damages.[24] Victims of fraud are entitled to damages to justly compensate them for their injury.[25] Exemplary damages are available in tort even if the case incidentally involves a contract.[26] The Currans made a claim of fraud. Their punitive-damage claim relied on that alleged fraud. Since we have reversed the trial court's entry of summary judgment on the Currans' fraud claim, we must also reverse the summary judgment entered on the punitive-damages claim that depended upon it.

## VIII. The Defendants' Frivolous–Conduct Claim

{¶ 24} Finally, the defendants have asked us to sanction the Currans for frivolous conduct by awarding the defendants their attorney fees. Defense counsel has submitted his bills for the five defendants totaling about $35,000. The defendants state that the Currans have engaged in frivolous conduct by filing an appeal that is "not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law."[27] And App.R. 23 provides sanctions for frivolous conduct. "A frivolous appeal under App.R. 23 is essentially one which presents no reasonable question for review."[28] But, obviously, a successful appeal cannot be frivolous.[29] As we

---

23. *Preston v. Murty* (1987), 32 Ohio St.3d 334, 336, 512 N.E.2d 1174.

24. *Roberts v. Mason* (1859), 10 Ohio St. 277, 1859 WL 78, syllabus.

25. *Burr*, 23 Ohio St.3d at 74, 23 OBR 200, 491 N.E.2d 1101, quoting *Foust*, 4 Ohio App.3d at 166, 4 OBR 264, 446 N.E.2d 1122.

26. *Sweet v. Grange Mut. Cas. Co.* (1975), 50 Ohio App.2d 401, 407, 4 O.O.3d 399, 364 N.E.2d 38.

27. R.C. 2323.51(A)(2)(a)(ii).

28. *Talbott v. Fountas* (1984), 16 Ohio App.3d 226, 16 OBR 242, 475 N.E.2d 187.

29. *Millstone Dev. Ltd. v. Berry*, 10th Dist. No. 03AP–531, 2004-Ohio-1215, 2004 WL 503926, ¶ 23.

have now ruled for the Currans, their appeal is not frivolous. Defendants' motion is denied.

## IX. We Reverse

{¶ 25} The Currans have alleged that they have been wronged. The defendants essentially argue that the Currans have no remedy. This is the sort of legal supposition about which Mr. Bumble rightly grumbled.[30] Fortunately, the Currans' right to seek justice has been guaranteed by the Ohio Bill of Rights since statehood: "every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."[31]

{¶ 26} It has been four years and thousands of dollars since the events that gave rise to this suit. We reverse and remand so the Currans may have their day in court to seek compensation in tort for their alleged injury under their claim of fraud.

Judgment reversed
and cause remanded.

HILDEBRANDT and CUNNINGHAM, JJ., concur.

---

30. Dickens, Oliver Twist (1870), Chapter 51.

31. Section 16, Article I, Ohio Constitution, slightly rephrasing former Section 7, Article VIII, Ohio Constitution (1802).