[Cite as *Berger v. Wade*, 2014-Ohio-1262.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ALFRED J. BERGER, JR., | : | APPEAL NO. C-120863 |
| | | TRIAL NO. A-1102145 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| MARTIN WADE, | : | |
| | | |
| Defendant-Appellee/Third-Party Plaintiff, | : | |
| | : | |
| and | | |
| | : | |
| CHRISTOPHER ROSE, | | |
| | : | |
| Third-Party Defendant. | : | |

Civil Appeal From: Hamilton County Common Pleas Court

Judgment Appealed From Is: Reversed And Cause Remanded

Date of Judgment Entry on Appeal: March 28, 2014

*Justin Fernandez*, for Plaintiff-Appellant,

*Taft Stettinius & Hollister LLP, Russell S. Sayre* and *Nicholas J. Pieczonka*, for Defendant-Appellee/Third-Party Plaintiff.

Please note: this case has been removed from the accelerated calendar.

Per Curiam.

{¶1} Following a bench trial, plaintiff-appellant Alfred J. Berger, Jr., appeals from the trial court's judgment in favor of defendant-appellee/third-party plaintiff Martin Wade, on Berger's claim that Wade had failed to repay a business loan that he had personally guaranteed. Berger contends that the trial court erred when it found that he had fraudulently induced Wade into executing the guaranty agreement. We agree and reverse.

{¶2} In 2006, third-party defendant Christopher Rose, a local developer, approached Wade about investing in The Rookwood Corporation, doing business as The Rookwood Pottery Company ("Rookwood"). By 2009, Wade had invested over $1 million in the corporation and was its largest shareholder. Though he was not involved in the day-to-day operations of the company, Wade had access to the corporation's books, records, and financial information.

{¶3} In 2009, Rose obtained a loan commitment for Rookwood from the Ohio Department of Development. Because the proceeds of the Ohio loan took longer than expected to reach the company, funding difficulties imperiled the development. To cover the shortfall, Rose sought temporary financing. He approached Berger about the possibility of making a short-term loan to the company. After negotiations between Rose and Berger, Berger agreed to lend Rookwood $100,000 to fund operations until the proceeds of the Ohio loan were delivered.

{¶4} Berger was given the opportunity to examine the books of Rookwood. Given Rookwood's poor financial condition, Berger was unwilling to lend the company the funds without additional security. Therefore, as a condition of making the loan, Berger insisted that Rose and Wade co-sign the promissory note, and that Rose and Wade personally guarantee the debt.

2

{¶5}     The debt was to be evidenced by a promissory note which Berger had drafted.  Berger ultimately admitted that he had copied documents originally prepared by a Cincinnati law firm for another transaction that also involved a promissory note and guaranty.  Though not a lawyer, Berger "changed [the documents] to fit the circumstances" of the Rookwood deal.  The changes took less than ten minutes.  The documents provided that Berger would loan the corporation $100,000 in August 2009.  The corporation, Rose, and Wade promised to repay the loan in one month with $10,000 in interest also due at that time.  In a separate guaranty agreement, Rose and Wade personally guaranteed the loan repayment.

{¶6}     Rose presented Berger's note and guaranty to Wade.  Despite examining the note for less than three minutes, and the guaranty for less than five, Wade signed the documents.  He had not met with or spoken to Berger before signing the documents.

{¶7}     The promissory note provided, on its first page, that:

This Note is secured by a first-priority security interest in the Assets of The Rookwood Corporation pursuant to the terms of a Security Agreement dated of even date herewith between The Rookwood Corporation and [Berger] (the "Security Agreement").

As it turned out, however, there was no security agreement and, therefore, no security interest existed.

{¶8}     The guaranty agreement, signed with the note, provided that Wade, as a guarantor, "absolutely and unconditionally" guaranteed the full and punctual payment due to Berger under the note.  Section 1(b)(i) of the guaranty provided that Wade authorized Berger, "as he may elect" and without prior notice, to alter any of the terms of the note including "releasing" any security for payment of the note.

{¶9} Section 1(c) of the guaranty provided that Wade's obligation to pay the funds due under the note was not affected by "any of the following," all of which Wade, as a guarantor, waived: (1) any failure to perfect any security interest in any collateral securing payment under the note; (2) the invalidity, unenforceability, or loss or change in priority of any security interest guaranteeing payment; (3) the right to require Berger to proceed against other borrowers or any security held by Berger; (4) "any defense arising by reason of the cessation from any cause whatsoever of liability of [Rookwood, Wade and Rose] including, without limitation, any failure, negligence or omission" of Berger; and (5) any defense based upon Wade's lack of knowledge of the borrowers' financial condition, and the invalidity or unenforceability of any of the underlying obligations.

{¶10} In other sections of the guaranty, Wade acknowledged that Berger could proceed to recover the obligations due under the note from Wade without first proceeding against any other party. Wade also waived the performance or enforcement of any terms or provisions of the note or guaranty, including the security agreement.

{¶11} In sections 5 and 6 of the guaranty, Wade warranted that he had had full and complete access to the note and all other documents relating to the obligation and that he had "reviewed them and [wa]s fully aware of the meaning and effect of their content." He also agreed that he had delivered "this Guaranty based solely upon [his] own independent investigation * * * and not upon any representations or statements of [Berger]."

{¶12} Rookwood and its guarantors failed to pay the note at maturity. By November 2010, less than $35,000 of the principal had been repaid. When Rookwood could not repay the loan, and Wade refused to honor the guaranty agreement, Berger brought suit for breach of contract. In December 2011, the trial court granted Wade's

third-party complaint against Rose for indemnity and contribution of any amounts due to Berger.

{¶13} In his amended answer, Wade raised the affirmative defense of fraudulent inducement. He asserted that he had been induced to sign the note and guaranty because the note provided that the debt was secured by the assets of Rookwood pursuant to a security agreement between Berger and The Rookwood Corporation. But, as Berger admitted at trial, no security agreement existed and no security interest had been created or perfected. Berger admitted that his representation about the security interest was "not accurate."

{¶14} Notwithstanding the provisions of the guaranty agreement, and Wade's statements that he had read the guaranty and had no questions about it, that it "seemed like a standard guaranty" with no unfair terms, Wade testified that he "probably would not have signed" the note without the first-priority security interest in the assets of The Rookwood Corporation.

{¶15} The trial court agreed and found that Berger's false representation about the existence of a security agreement was "material and fraudulent" and voided Wade's guaranty and promise to pay. The court found that the "demonstrably false clause was inserted to induce [Wade] to sign the note." The trial court then entered judgment in Wade's favor on his defense of fraudulent inducement. This appeal followed.

{¶16} In his third assignment of error, Berger argues that the trial court's finding that Berger had fraudulently induced Wade to sign the note and guaranty was erroneous and that the court's judgment was against the manifest weight of the evidence and must be reversed. We agree.

**{¶17}** When addressing a challenge to the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the case must be reversed and a new trial ordered. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386-87, 678 N.E.2d 541 (1997).

**{¶18}** Fraud in the inducement is a valid defense to the enforcement of a promissory note and guaranty. To establish the defense that he was fraudulently induced to enter into the note and guaranty, Wade had to show: (1) a false representation concerning a fact material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance. *See Lepera v. Fuson*, 83 Ohio App.3d 17, 23, 613 N.E.2d 1060 (1st Dist.1992); *see also Curran v. Vincent*, 175 Ohio App.3d 146, 2007-Ohio-3680, 885 N.E.2d 964 (1st Dist.); *Information Leasing Corp. v. Chambers*, 152 Ohio App.3d 715, 2003-Ohio-2670, 789 N.E.2d 1155, ¶ 84 (1st Dist.). Berger argues that Wade failed to demonstrate justifiable reliance on Berger's representation as to the security agreement.

**{¶19}** The requirement of justifiable reliance is best understood as testing the credibility of the claim that fraud induced a party to act. The necessity that the reliance is justified screens out pretextual claims or defenses put forward after adverse facts on the ground have rendered a party's promise unprofitable. *See* Keeton, Dobbs, Keeton & Owens, *Prosser and Keeton on the Law of Torts*, Section 108, 750-753 (5th Ed.1984).

6

{¶20}   The question of justifiable reliance is one of fact, and the court must inquire into the nature of the transaction, the representation, and the relationship of the parties.  *See Lepera v. Fuson*, 83 Ohio App.3d 17, 26, 613 N.E.2d 1060 (1st Dist.1992); *see also Hubbard Family Trust v. TNT Land Holdings, LLC*, 4th Dist. Pike No. 12CA833, 2014-Ohio-772, ¶ 30; *Crown Property Dev., Inc. v. Omega Oil Co.*, 113 Ohio App.3d 647, 657, 681 N.E.2d 1343 (12th Dist.1996).

{¶21}   Wade testified that he would "probably not" have signed the note and guaranty if he had known that the first-priority security agreement identified in the note did not exist.  He stated that he assumed that Berger would enforce the security interest to pay the debt rather than proceed against him.

{¶22}   Yet, the overwhelming weight of the evidence in the record reflects that Wade's assumption and his reliance on the fictitious representation were not justified. Wade was a principal investor in Rookwood.  Before signing the note and guaranty, he had examined the corporation's financial statements.  Although Berger's note stated that it was secured by a first-priority security interest, Wade knew that Rookwood had already given security interests in its assets and real property to another investor and to the Ohio development agency.  Wade admitted that he had already personally guaranteed the payment of some of those loans.

{¶23}   Before signing Berger's note and guaranty, Wade, an experienced certified public accountant and former attorney, reviewed the documents, albeit very briefly.  He admitted that under the guaranty's express terms, whether Berger's security agreement existed or not, Berger could proceed against Wade personally if the note was not repaid.  Wade acknowledged that he had waived the right to require Berger to proceed first against "any other person or any security."  In light of these facts, Wade's

assumption that Berger would not elect to proceed against him for the funds, and his reliance on that assumption, was simply not sustainable.

{¶24} We hold that Wade's belief that the fictitious security agreement would protect him from having to satisfy the amount due on the note was not justified under the circumstances. Accordingly, we conclude that the judgment as to the fraudulent-inducement defense was against the manifest weight of the evidence. The third assignment of error is sustained.

{¶25} Berger's second assignment of error, in which he asserts that the trial court committed plain error, is feckless. Plain error contemplates an appellate court reviewing trial errors claimed to be so basic and fundamental that despite the absence of objection at trial, prejudice must be found. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. As Wade correctly notes, Berger has failed to identify in the record the supposed basic and fundamental errors to which his trial counsel did not object. To receive consideration on appeal, trial-court errors must be argued and supported by citation to the record. *See* App.R. 16(A); *see also* 1st Dist. Loc.R. 16(A)(3)(e). It is not this court's duty to search the record to root them out. The second assignment of error is overruled.

{¶26} In light of our resolution of the third assignment of error, Berger's first and fourth assignments of error are rendered moot. *See* App.R. 12(A)(1)(c).

{¶27} Therefore, the judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with law and this opinion.

Judgment reversed and cause remanded.

**HENDON, P.J., CUNNINGHAM** and **DEWINE, JJ.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.