[Cite as *March v. Statman*, 2016-Ohio-2846.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PERRIN G. MARCH, IV, as the successor trustee of the Perrin G. March, III, Revocable Trust, | : | APPEAL NO. C-150337<br>TRIAL NOS. A-1209832 |
| | : | A-1301453 |
| and | : | A-1303506 |
| | | A-1304301 |
| PERRIN G. MARCH, IV, as the successor trustee of the  Maud Rydin March Revocable Trust, | : | A-1306119 |
| | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| ALAN J. STATMAN, | : | |
| and | : | |
| STATMAN HARRIS & EYRICH, LLC, | : | |
| Defendants-Appellees, | : | |
| and | : | |
| CHRISTINA MARCH, et al. | : | |
| Defendants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 6, 2016

*Graydon Head & Ritchey LLP* and *Michael A. Roberts*, for Plaintiffs-Appellants,

*Schroeder, Maundrell, Barbiere & Powers* and *John W. Hust*, and *George D. Jonson,* for Defendants-Appellees.

Please note:  This case has been removed from the accelerated calendar.

Per Curiam.

{¶1}   Plaintiff-appellants Perrin G. March, IV, as the successor trustee of the Perrin G. March, III, Revocable Trust, and Perrin G. March, IV, as the successor trustee of the Maud Rydin March Revocable Trust (collectively "PMIV"), appeal the decision of the trial court granting summary judgment in favor of defendants-appellants Alan J. Statman and Statman, Harris & Eyrich, LLC, ("SH&E").  We affirm the trial court's judgment.

### I.  Factual Background

{¶2}   Perrin March, III, ("PMIII") was an officer and director of Cincinnati Incorporated ("CI"), a business owned by the March family for generations.  Perrin G. March, IV, is his son and Christina March is his daughter.  In 2004, Christina married Michiel Schuitemaker.  Subsequently, Schuitemaker became an employee of CI and eventually became CI's CEO, despite having no experience as a chief executive of a company.

{¶3}   When PMIII's health began to decline, he went to live with Christina and Schuitemaker.  In 2011, Christina sought a divorce from Schuitemaker.  Subsequently, Schuitemaker engaged in a number of rather questionable transactions with CI assets.  A series of lawsuits involving CI, Schuitemaker, and numerous other parties were filed, which the trial court eventually consolidated under case number A-1209832.  Subsequently, a jury determined that Schuitemaker had violated his fiduciary duty to CI and its shareholders, and awarded CI over $8,000,000.

### A.  Transfer of a $17 Million Note

{¶4}   Over time, a myriad of issues between the parties were determined by the court or settled by the parties.  The only remaining issues involve a promissory note

3

with a face value of over $17 million. In the early 2000's, PMIII and his wife had loaned CI over $17 million dollars in a series of notes to remedy cash-flow problems. That series of notes was eventually consolidated into the $17 million note. In 2009, PMIII assigned the consolidated note to Schuitemaker for $50,000.

{¶5} Ken Jenkins of Rippe & Kingston ("R&K") was PMIII's long-time accountant. Jenkins testified that in 2009, PMIII had asked his firm for a valuation of the note for "gift and estate planning purposes" in connection with a planned transfer of the note to his family members. At that time, CI was in dire financial straits, and Jenkins believed that the company and, therefore, the note had no value.

{¶6} On September 11, 2009, Jenkins and his partner Joseph Rippe met with PMIII and Schuitemaker. At that meeting, PMIII expressed his desire to sell the note for the lowest price that would be defensible against scrutiny from the Internal Revenue Service. Jenkins stated that during that meeting, it appeared that PMIII "was lucid, competent, and acting of his own free will, and that he desired to transfer the note for $50,000."

{¶7} PMIII then asked his attorney, Michael Cooney, to draft the note and assignment. Cooney explained to Schuitemaker that that because he represented PMIII in the transaction, Cooney would be looking out for PMIII's interests.

### B.  Discussions between Schuitemaker and Statman

{¶8} Prior to the meeting, Schuitemaker had contacted Statman, a bankruptcy attorney and long-time friend, about two issues relating to the transaction: (1) was a price of approximately $184,000 for the note defensible if the IRS challenged the transaction as a gift; and (2) how would the note be treated if CI filed for bankruptcy? Specifically, the issue arose as to whether the note or an unfunded pension liability would have priority and, therefore, a greater value, in the event of a liquidation.

{¶9}   Statman, Schuitemaker, and Jenkins exchanged a series of emails regarding those issues.  Statman and another attorney at his firm expressed the opinion that the note would likely be subordinate to the pension liability.  Jenkins informed Schuitemaker that if the note was subordinate to the pension, then "[a]s expected, value of the note is zero."  Schuitemaker forwarded Jenkins's email to Statman, stating that "[i]f the note is the last to be paid, the value is -0-.  Just the way I like it!"  Statman responded, "I love it when a plan comes together.  Do I get 1/3 of your $17M savings?"

{¶10}   Jenkins made repeated requests for Statman to provide written support for his assertions about priority that had led to the revised valuation.  On the morning of the meeting, he wrote:  "For our files (and for us to change the valuation report) we need something in writing that specifically addresses the priority payout for the pension."

{¶11}   On the morning of the meeting, Jenkins told Schuitemaker that Dinsmore & Shohl, PMIII's counsel, had "a different opinion on the priority of the pension."  Consequently, Jenkins stated that "there needs to be a meeting of the minds on this issue" and that R&K would "not have the final product for our meeting today."  Schuitemaker stated that Statman would provide the required confirmation, and he requested that the meeting and transfer proceed later that day.

{¶12}   Subsequently, Statman sent Schuitemaker an email, in which he advised Schuitemaker that a value of $184,000 for the note could be "defended under the facts and circumstances you discussed with us and the current economic climate."  As to the bankruptcy issue, Statman's email stated:

> We believe that the fact that this debt is owed by an insider makes recovery on the principal in any amount unlikely in a meltdown of the company.  Given the fact there is pension liability and deferred comp liability, we believe that 11 U.S.C. 510 will come into play (risk of equitable

subordination). We also believe that loan may be thought of as a capital contribution and not debt at all if creditors would decide to challenge the liability.

* * *

Lastly, we do not believe any debt buyer in today's market would pay anymore than $184,000 given the yield and the fact that the company has lost $2+ million year to date. I can shop the note if you are interested in an outside offer for it.

While we can issue no guarantees, we believe if a problem arises we can put forth a reasonable defense on your behalf. Let me know if we can be of further assistance.

{¶13} At the meeting later that day, PMIII agreed to transfer the note to Christina for the nominal value of $50,000 based on R&K's valuation. The following day, Jenkins sent an email to Cooney, PMIII's attorney, informing him of the agreement to transfer the note to Christina. Schuitemaker shared that email with Statman, stating that "I'm not sure if it's better for Christina or I to buy the loan. Any thoughts?" Statman responded, "if there is a divorce do you want her to own the $17M debt to hold over you and the company."

{¶14} Subsequently, Cooney sent Schuitemaker a draft of the assignment stating that the note would be assigned to Christina. But the document that PMIII later signed identified Schuitemaker as the sole assignee, with an effective date of September 11, 2009.

### C.  Claims against Statman and SH&E

{¶15} In one of the many lawsuits, PMIV named Statman and SH&E as defendants. He raised causes of action for fraud and civil conspiracy related to the

6

transfer of the note, alleging that Statman had colluded with Schuitemaker to have PMIII transfer the note to Schuitemaker for far less than its actual value. The trial court granted Statman's motion for summary judgment, finding that the record did not show that Statman had engaged in any misrepresentation or that PMIII had reasonably relied on any misrepresentation by Statman. This appeal followed.

{¶16} In his sole assignment of error, PMIV contends that the trial court erred in granting Statman's motion for summary judgment. He argues that evidence in the record creates issues of fact as to whether Statman made an actionable misrepresentation to PMIII or his advisors, whether PMIII justifiably relied on Statman's representations regarding the value of the note, and whether Statman assisted Schuitemaker to defraud PMIII to obtain possession of the $17 million note. This assignment of error is not well taken.

## II. Standard of Review

{¶17} An appellate court reviews a trial court's ruling on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Evans v. Thrasher*, 1st Dist. Hamilton No. C-120783, 2013-Ohio-4776, ¶ 25. Summary judgment is appropriate if (1) no genuine issue of material fact exists for trial, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the moving party, who is entitled to have the evidence construed most strongly in his or her favor. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977); *Evans* at ¶ 25.

## III. Fraud

{¶18} Fraud is (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether

7

it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998).

{¶19}  The trial court stated that PMIV "points to no evidence where Statman misrepresented anything to PMIII or his advisors regarding the value of the Note. Plaintiff points to no evidence that Statman failed to disclose any information to PMIII or his advisors." We agree.

{¶20}  The record shows that PMIII's own advisors felt that the note had no value due to the company's financial condition, that PMIII wanted the note valued for "estate-planning" purposes, and that all involved in the transaction were searching for a purchase price other than zero to avoid a later challenge by the IRS. Schuitemaker asked Statman to provide legal opinions regarding the valuation of the note and how the note would be treated in the event of a CI bankruptcy. Many of those opinions depended on the *future* actions of others. Statman opined that the note's treatment in the event of a bankruptcy would depend on whether the creditors would challenge the priority of the note based on equitable subrogation or seek to have the note characterized as equity or capital.

{¶21}  Nothing in the record shows that Statman misrepresented a fact material to the transaction. He stated his legal opinion on issues primarily related to future actions or conduct, which does not constitute a fraudulent misrepresentation. *See Cleveland Constr., Inc. v. Roetzel & Andress, L.P.A.*, 8th Dist. Cuyahoga No. 94973, 2011-Ohio-1237, ¶ 38; *Farris Disposal, Inc. v. Leipply's Gasthaus, Inc.*, 9th Dist. Summit No. 22569, 2005-Ohio-6737, ¶ 15; *Lynch v. Dial Fin. Co.*, 101 Ohio App.3d 742, 750, 656 N.E.2d 714 (8th Dist.1995); *Scotts Co., LLC v. Liberty Mut. Ins.*

*Co.*, 606 F.Supp.2d 722, 742, (S.D.Ohio 2009), citing *Aetna Ins. Co. v. Reed*, 33 Ohio St. 283, 292-295 (1877).

{¶22} Further, PMIV failed to show a material issue of fact as to justifiable reliance. In determining whether a party justifiably relied on a representation, a court must consider the nature of the transaction, the representation, the relationship of the parties, as well any other relevant circumstances. *Berger v. Wade*, 1st Dist. Hamilton No. C-120863, 2014-Ohio-1262, ¶ 19; *Farris Disposal, Inc.* at ¶ 18. The requirement of justifiable reliance tests the credibility of the claim that fraud induced a party to act and it is generally a question of fact. *Berger* at ¶ 19-20. But if no issues of material fact exist as to whether a party justifiably relied on a misrepresentation, summary judgment on that issue is appropriate. *See Donson v. Comey & Shepherd, Inc.*, 1st Dist. Hamilton No. C-920105, 1993 Ohio App. LEXIS 1953, *7 (Apr. 7, 1993).

{¶23} Even if PMIV had shown that Statman had made a false misrepresentation as to the value of the note, nothing in the record shows that PMIII or his advisors relied upon Statman's statements. Jenkins, PMIII's accountant, testified that R&K did not allow anyone to influence its expert opinions. The valuation itself specifically stated that "[n]o one provided significant professional assistance to the preparers of this report." When asked to describe Statman's role in the valuation, Jenkins stated that Statman had "no role."

{¶24} PMIV argues that PMIII relied on Schuitemaker, and that Statman, acting in concert with Schuitemaker, provided false information to influence the result of the valuation. But the evidence does not show that PMIII relied on any statement or information from Schuitemaker. Much of the financial information used in R&K's valuation was provided by other individuals at CI. Further, the

9

undisputed evidence showed that PMIII sought to have the note valued at the lowest possible amount for "estate-planning" purposes and that he employed R&K to complete the task. R&K valued the note based on information from the company, and its conclusions about the company's financial status were consistent with other professional opinions at the time. In fact, PMIV testified that he had no reason to doubt CI's audited financial statements or the opinion of other professionals who concluded that, at the time, the company had no value.

{¶25} PMIV presented expert opinions disputing the $50,000 value of the note at the time of the transfer and criticizing R&K's methodology in opposing the various motions for summary judgment. But those experts pointed to no false or fraudulent data. A disagreement regarding the valuation does not rise to the level of fraud. *See Baker v. Cuyahoga Cty. Bar Assn.*, 9th Dist. Summit No. 12594, 1986 Ohio App. LEXIS 8375, *7 (Sept. 17, 1986).

{¶26} We find no issues of material fact. Construing the evidence most strongly in PMIV's favor, we hold that reasonable minds could come to but one conclusion—that PMIV failed to prove a genuine issue of material fact on all the elements of fraud. Consequently, the trial court did not err in granting summary judgment in Statman's and SH&E's favor on PMIV's fraud claim.

### IV.  Civil Conspiracy

{¶27} PMIV also argues that the trial court erred in granting summary judgment on his civil-conspiracy claim. A civil conspiracy is "a malicious combination of two or more persons to injure another in person or property in a way not competent of one alone, resulting in actual damages." *Kenty v. Transam. Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995). A civil-conspiracy claim cannot succeed without an underlying unlawful act. *Williams,* 83 Ohio St.3d at

10

475, 700 N.E.2d 859; *Daudistel v. Silverton*, 1st Dist. Hamilton No. C-130661, 2014-Ohio-5731, ¶ 44.

{¶28}   Since the substantive fraud claim on which the conspiracy claim is based is without merit, PMIV's civil-conspiracy claim must also fail.  *See Williams* at 475; *Daudistel* at ¶ 44; *Doane v. Givaudan Flavors Corp.*, 184 Ohio App.3d 26, 2009-Ohio-4989, 919 N.E.2d 290, ¶ 32 (1st Dist.).  Therefore, the trial court did not err in granting Statman's and SH&E's motion for summary judgment on PMIV's civil-conspiracy claim.

### V.  Summary

{¶29}   In sum, we find no merit in PMIV's arguments.   Therefore, we overrule his sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**FISCHER, P.J., POWELL** and **SUNDERMANN, JJ.,** concur.

MICHAEL E. POWELL, of the Twelfth Appellate District, and J. HOWARD SUNDERMANN, retired, from the First Appellate District, sitting by assignment.

Please note:

The court has recorded its own entry this date.