SANFILLIPO ET AL., APPELLANTS, *v.* RARDEN ET AL., APPELLEES.

(No. C-840484—Decided May 29, 1985.)

*Robert L. Rinear,* for appellants.
*Norman I. Barron,* for appellee Lillie Rose Fletcher Rarden et al.
*Thomas Shore,* for appellees Comey & Shepherd, Inc. and June Frame.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County.

In this appeal, the question posed by the only assignment of error given to us for review is whether the trial judge properly invoked the provisions of Civ. R. 56 to deny relief to the plaintiffs-appellants, Joseph and Martha Jane Sanfillipo, in an action that sought damages for misrepresentations allegedly made in connection with the sale of an unimproved parcel of real estate. To resolve this question, we must assess the evidence in the record as it bears upon the several potentially determinative issues brought to light by the allegations set forth in the Sanfillipos' complaint. Among those issues, there are three that lie at the heart of the dispute between the parties; they are: (1) whether representations concerning the availability of certain utility services on the property rose to the level of actual fraud; (2) whether the Sanfillipos had a right to rely upon the representations when purchasing the property; and (3) whether the contract of sale precluded the assertion of any claim for damages predicated upon representations not specifically incorporated in the agreement.

According to the record, the Sanfillipos purchased approximately eleven

acres of land situated in that part of Hamilton County known as Green Township pursuant to the terms of a standard form contract at a closing held on September 16, 1982. The property had been part of a decedent's estate and was sold to them on behalf of the various heirs to whom it had been devised by the local real estate firm of Comey and Shepherd, Inc.

In the course of the negotiations that preceded the agreement to purchase the property, the Sanfillipos dealt almost exclusively with June Frame, a sales agent for Comey and Shepherd who became involved in putting the transaction together as a result of the temporary hospitalization of the original listing agent, James Van Pelt. Working in part from a written description of the property prepared by Van Pelt for promotional purposes, Frame did, without question, provide certain information for the benefit of prospective purchasers such as the Sanfillipos. Although the precise extent of her representations was the subject of some controversy in the court below, there is evidence in the record to demonstrate that she orally advised Joseph Sanfillipo on at least one occasion prior to the closing that there was access to gas and water utility services on the otherwise undeveloped acreage.

It may be said from the record that the statements Sanfillipo attributed to Frame were false and misleading. Although her associate, Van Pelt, apparently did become aware while the property was on the market that gas and water services were, in fact, unavailable at the immediate site, Frame never corrected the information she had separately conveyed to the Sanfillipos. As a consequence of the error in disclosure, Joseph Sanfillipo stated that he made no further efforts to ascertain independently whether the services he believed to be on the property were actually available. When he admittedly "walked the property" prior to the closing, he insisted that his only interest was to examine the suitability of potential building sites, and that he was not particularly concerned with "where the utilities were * * * as long as they were there and there was access to them."

After the Sanfillipos learned the truth about the absence of the utility services, they elected not to seek a rescission of the contract of sale, deciding instead to pursue a claim for damages against Frame, Comey and Shepherd, and the group of heirs who were the actual sellers of the property. Their theory of liability was set forth succinctly in two paragraphs of the complaint[1] filed in the court below as follows:

"6. The defendants herein, by and through defendants Comey and Shepherd, Inc. and June Frame, represented to the plaintiffs that utilities, gas and water, were at or upon the real estate herein.

"7. Defendants herein knew, or should have known, that the representations about said utilities were false, and said representations were willfully and recklessly made to induce plaintiffs to purchase the real estate."

Summary judgment was awarded to all the named defendants in the action,

---

[1] It has been argued by one of the parties that a defect in the Sanfillipos' complaint barred pursuit of the claim for damages in the court below. Although it is true that the allegations failed to set forth in great detail all the essential elements of an affirmative claim for fraud under Ohio law, we are convinced that the pleading fairly gave notice of the specific theory of liability advanced by the Sanfillipos. That the defendants understood the nature of the claim asserted against them is best exemplified by their failure to raise any objections to the complaint before the court below awarded them summary judgment.

primarily upon the court's assessment of the submitted deposition testimony of Joseph Sanfillipo, James Van Pelt and June Frame. In the entry placed of record on June 5, 1984, the court stated only that "there is no genuine issue as to any material fact and that each of the defendants herein is entitled to a judgment as a matter of law." No attempt was made to articulate a supporting rationale.

Where, as here, the theory advanced in support of a claim for damages is, in essence, that a party was fraudulently induced to enter into a contract, there are five basic elements to define the cause of action: (1) a false representation concerning a fact material to the transaction; (2) knowledge of the falsity of the statement or utter disregard for its truth; (3) intent to induce reliance on the misrepresentation; (4) reliance under circumstances manifesting a right to rely; and (5) injury resulting from the reliance. *Lloyd* v. *Classic Motor Coaches, Inc.* (N.D. Ohio 1974), 388 F. Supp. 785, 791; *Greenwalt* v. *Goodyear Tire & Rubber Co.* (1955), 164 Ohio St. 1, 6 [57 O.O. 57]; *Hibbett* v. *Cincinnati* (1982), 4 Ohio App. 3d 128, 131. Unlike an action for the rescission of a contract, an action for damages cannot proceed on the basis of a misrepresentation that is, under the circumstances, in the nature of an innocent mistake of fact; to establish a right to relief, the complaining party must show actual fraud or such gross negligence as will amount to fraud. Compare *Brannon* v. *Mueller Realty & Notaries* (Oct. 24, 1984), Hamilton App. No. C-830876, unreported, with *Feichtner* v. *Zicka Homes, Inc.* (Mar. 23, 1983), Hamilton App. No. C-820427, unreported.

In the context of the arguments now given to us by the parties, we must first determine from the record whether there was evidence before the court below sufficient to withstand a motion for summary judgment with respect to

Frame's state of mind at the time the misrepresentations were conveyed to the Sanfillipos. From the standpoint of those who prevailed under the court's ruling, there was no genuine issue of material fact in this respect because the most that could have been said from the evidence was that Frame made an innocent mistake about the availability of utility services on the property in legitimate reliance upon information prepared by her associate, Van Pelt. That mistake, as they see it, was not so reprehensible in nature as to constitute the sort of fraud required to obtain relief in an action for damages.

Although it is safe to say that this theory of mistake is consistent with some of the deposition testimony in the record, it is not, in our judgment, the only conclusion to be drawn from the evidence submitted to the court below. There is other testimony in the record tending to show not only that Frame had done no independent research to verify the accuracy of her representations concerning the utility services, but also that she was specifically aware of the unavailability of the services as a result of a telephone conversation with Van Pelt prior to the sale of the property. In view of the readily apparent conflict in the evidence, it cannot be said as a matter of law that Frame spoke in the absence of circumstances exhibiting that she either knew or should have known of the inaccuracy of her representations. We must conclude, therefore, that the action could not have been resolved in the court below by summary judgment on the issue of actual fraud.

The next issue brought to our attention by the parties concerns the Sanfillipos' right to rely on the misrepresentations attributed to Frame. To determine whether the question of reliance was properly subject to resolution as a matter of law on the state of this record, we must assess the significance of the doctrine of caveat emptor insofar as it

might be said to apply to the evidence adduced below.

One frequently cited expression of the doctrine in the context of a real estate transaction appears in *Traverse* v. *Long* (1956), 165 Ohio St. 249 [59 O.O. 325]. In *Long,* at 252, the Ohio Supreme Court affirmed a trial court's judgment in an action seeking damages for fraudulent representations, stating, *inter alia,* that:

"* * * [C]*aveat emptor* applies to sales of real estate relative to conditions open to observation. Where those conditions are discoverable and the purchaser has the opportunity for investigation and determination without concealment or hindrance by the vendor, the purchaser has no just cause for complaint even though there are misstatements and misrepresentations by the vendor not so reprehensible in nature as to constitute fraud. * * *" (Citations omitted.)

As the doctrine has evolved over time, it has remained limited in application, consistent with the language from which we have just quoted, to circumstances where there are no latent defects in the property and the conditions in question are open to observation. See, *e.g., Miles* v. *McSwegin* (1979), 58 Ohio St. 2d 97, 101 [12 O.O.3d 108]. To the extent that it might separately be said to impose some duty of inspection on a purchaser, however, it is clear that the duty is no longer to be defined in the strict sense of the terms originally used in *Long.* In this respect, we have said that a purchaser is not necessarily barred from obtaining relief due to his failure to examine public records in advance of his acquisition of property, *Niehaus* v. *Haven Park West, Inc.* (1981), 2 Ohio App. 3d 24, and the members of the Sixth Appellate District

have stated that any duty of inspection may be held to terminate at the point when representations have been made with respect to a material fact in direct response to a purchaser's inquiry. *Foust* v. *Valleybrook Realty Co.* (1981), 4 Ohio App. 3d 164, 165-166.

In the case *sub judice,* there is evidence in the record to show that Joseph Sanfillipo specifically inquired about the availability of utility services on the property he and his wife ultimately purchased, and that Frame's misrepresentations came as a direct result of that inquiry. There is, as well, some evidence to counter the assertion that the absence of the services was readily apparent from a visual inspection of the property.[2] According to the deposition testimony of James Van Pelt, the original listing agent, he became aware that there was no immediate access to gas and water services on the property only after examining plat and topography maps, receiving telephone calls from neighboring landowners, and speaking to representatives of the respective utility companies. With this evidence in the record, it certainly cannot be said as a matter of law that the Sanfillipos had no right to rely on Frame's representations under the doctrine of caveat emptor.

The last of the three significant issues pertinent to our review of the order granting summary judgment concerns the effect of paragraph 13 in the standard-form contract of sale, which was set forth in bold-face print and reads as follows:

"Purchaser is relying solely upon his own examination of the real estate, the owner's certifications herein, and inspections herein required, if any, for its physical condition and character, and

---

[2] We cannot find within the record any evidence to demonstrate precisely why the absence of utility services should have been apparent to any reasonable observer inspecting the property. What, at first, may appear to be a logical assumption must ultimately fail for want of proof.

not upon any representations by the real estate agents involved, except for those made by said agents directly to the purchaser in writing."

Specifically, we must determine whether this contractually imposed limitation of liability was enforceable to preclude the Sanfillipos from pursuing a claim for relief on the basis of representations that were concededly not incorporated in the agreement and not separately reduced to writing.

Although it is not uncommon to find terms in a contract purporting to restrict one party's exposure to liability, the case law in Ohio recognizes the enforceability of such a provision only in cases where damages have been caused by negligence; a limitation of liability has no effect when there has been a failure to exercise any care whatsoever, *Richard A. Berjian, D.O., Inc.* v. *Ohio Bell Tel. Co.* (1978), 54 Ohio St. 2d 147, 158 [8 O.O.3d 149], or when there has been willful or wanton misconduct, *Cain* v. *Cleveland Parachute Training Center* (1983), 9 Ohio App. 3d 27, 28.

In a case such as this where the claim for relief is predicated upon a theory of fraudulent inducement, it is generally said that misrepresentations regarding the subject matter of a contract survive the execution of the deed if they have induced reliance on the part of one who has entered into the agreement. *Feichtner* v. *Zicka Homes, Inc., supra.* Following the analysis of the cases addressing the effect of contractual restrictions of liability, we now hold that misrepresentations also survive the execution of a contract that specifically purports to limit a party's liability if it can be shown that the statements were made under circumstances exhibiting actual fraud.

As we have already noted, the record here does contain evidence upon which a reasonable mind might conclude that Frame's misrepresentations concerning the availability of utility services were something more than innocent or negligent mistakes of fact. Given the existence of a tenable basis for a finding of fraud, we are convinced that paragraph 13 of the contract of sale did not, as a matter of law, operate to frustrate pursuit of the cause of action stated in the Sanfillipos' complaint.

Having reviewed all the evidence in the record in a light most favorable to the Sanfillipos as Civ. R. 56(C) requires, we are convinced in each material respect that there were genuine issues of fact standing in the way of a resolution of the action by summary judgment.[3] For this reason, we must conclude that the judge presiding below acted improvidently when he determined the merits of the dispute as a matter of law in a manner adverse to the Sanfillipos. The assignment of error given to us for review is, accordingly, well-taken.

We reverse the judgment of the court of common pleas, and this cause is hereby remanded to that court for further proceedings in accordance with law not inconsistent with the terms of this decision.

*Judgment reversed
and cause remanded.*

SHANNON, P.J., KEEFE and HILDEBRANDT, JJ., concur.

---

[3] One ancillary issue raised only by the sellers of the property concerns the authority of their agent to make representations concerning such matters as utility services. A basis for that authority, sufficient in law to avoid summary judgment, may be found in the exclusive selling agency contract, which gave Comey and Shepherd, generally, the right to advertise and promote the sale of the property and, specifically, the right to place information concerning the property in publications circulated by a recognized listing service.