**LEPERA et al., Appellants,**

v.

**FUSON et al., Appellees.**

[Cite as *Lepera v. Fuson* (1992), 83 Ohio App.3d 17.]

Court of Appeals of Ohio,
Hamilton County.

No. C–910626.

Decided Sept. 30, 1992.

*Nippert & Nippert* and *Alfred K. Nippert, Jr.,* for appellants.

*Moore, Moore & Moore* and *Donald C. Moore, Jr.; Winslow W. Johnson,* for appellee Virginia Fuson.

*Rendigs, Fry, Kiely & Dennis* and *D. Michael Poast,* for appellees Duffy Better Homes and Gardens, and Dennis Clark.

*Harris, Harris & Field, Irving Harris* and *Jeffrey K. Lurie,* for appellees Thomas Compton, Doug Compton and Century 21 Compton Realtors.

*Per Curiam.*

Plaintiffs-appellants Thomas and Rhonda Lepera have taken the instant appeal from the entry of summary judgment for defendants-appellees Virginia Fuson, Thomas Compton, Doug Compton, Century 21 Compton Realtors, Dennis Clark and Duffy Better Homes and Gardens on the plaintiffs' complaint seeking damages or, in the alternative, rescission of an agreement to purchase real estate upon the theory that fraudulent misrepresentations on the part of the defendants

induced the plaintiffs to execute the agreement. The plaintiffs advance on appeal three assignments of error.

The evidence before us relevant to the defendants' motions for summary judgment consists of the affidavit and deposition of Virginia Fuson, excerpts from the deposition of Thomas Lepera, and the depositions of Thomas Compton, Dennis Clark and Dennis Elliot. The record discloses that, in 1974, Fuson purchased a two-family house in the village of Newtown, Hamilton County, Ohio, and that, from 1974 to 1990, she occupied the first floor of the house while a series of tenants occupied the second floor. In August 1989, Fuson engaged Century 21 Compton Realtors ("Compton Realtors") to market the property as a two-family residence. Thomas Compton, the listing salesperson for Compton Realtors, listed and advertised the property as a two-family residence and, on the three occasions when he showed the property, orally represented the property to prospective buyers as such.

In March 1990, Dennis Elliot, the building inspector for the village of Newtown, learned that Fuson's property was being offered for sale as a two-family residence. Elliot contacted Doug Compton, whose name appeared on the yard sign that Elliot observed advertising the house as a two-family residence, and advised him that the village zoning code, enacted in 1981, limited use of the property to a single-family residence. Elliot's conversation with Doug Compton prompted telephone calls from Thomas Compton and Virginia Fuson. Elliot stated in his deposition that, in his conversations with Fuson and Thomas Compton, he maintained the position that the property could be sold for use only as a single-family residence.

The defendants' version of these communications varies markedly from that of Elliot. Thomas Compton, in his deposition, testified that, in his telephone conversations with Elliot, he countered Elliot's assertion that the zoning code limited the property's use to single-family residential with the suggestion that a subsequent purchaser could continue Fuson's two-family use of the property as a nonconforming use because Fuson's use of the property preceded the enactment of the present zoning code. Fuson testified in her deposition that she contacted Elliot at Thomas Compton's urging and that Elliot assured her that she could sell the property as a two-family residence. Fuson then telephoned Compton to advise him of Elliot's altered stance. Compton further attested to a subsequent telephone conversation with Elliot in which Elliot stated that a discussion with the village solicitor had persuaded him that use of the property as a two-family residence could continue, provided no change was made that might be construed as a departure from a two-family use.

Dennis Clark, in his deposition, testified that the plaintiffs first expressed an interest in Fuson's property in June or July 1990, when, at their request, he

provided them with a list of two-family dwellings available in their price range. Clark conceded that he showed the property to the plaintiffs as a two-family residence and that he did not independently verify that it was so zoned. Clark denied any conversation with Thomas Compton regarding zoning, while Compton testified, to the contrary, that, in July 1990, he related to Clark the substance of his exchange with Dennis Elliot when Clark showed the property to the plaintiffs.

On July 23, 1990, the plaintiffs executed a contract to purchase the property. After Fuson accepted their offer, the plaintiffs had the property inspected, and a title search was performed on behalf of the plaintiffs' lending institution. On two occasions prior to the closing, the plaintiffs conducted their own inspection of the property and, in each instance, noted the presence of a tenant on the second floor. At the closing, Fuson wrote a check to the plaintiffs in the amount of $200 to cover the security deposit on the second-floor premises paid by her tenant.

In September 1990, renovations to the property initiated by the plaintiffs were halted when Elliot informed the plaintiffs that the zoning code restricted use of the property to a single-family residence. When, in October 1990, their application for a variance was rejected, the plaintiffs brought the action underlying the instant appeal.

The plaintiffs contend in their first assignment of error that summary judgment was improvidently entered for Fuson. In their second and third assignments of error, the plaintiffs mount similar challenges to the entry of summary judgment for Compton Realtors, Thomas Compton and Doug Compton and for Duffy Better Homes and Gardens and Dennis Clark. We address these challenges together and find them to be well taken.

■ The standard governing the disposition of the defendants' motions for summary judgment is set forth in Civ.R. 56. Pursuant thereto, a party against whom a claim is asserted may move, with or without supporting affidavits, for summary judgment in his favor on all or any part of the claim. Civ.R. 56(A). A motion for summary judgment may be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; Civ.R. 56(C).

■ The allegations of the plaintiffs' complaint state a claim for fraudulent inducement to enter into a contract. To establish a right to relief upon a claim

that they were fraudulently induced to enter into the contract to purchase Fuson's property, the plaintiffs must show: (1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 544 N.E.2d 265; *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709; *Sanfillipo v. Rarden* (1985), 24 Ohio App.3d 164, 24 OBR 253, 493 N.E.2d 991.

■ We note as a preliminary matter that the record before us supports a finding that Thomas Compton, Doug Compton and Compton Realtors, by virtue of the Exclusive Right to Sell agreement executed when Fuson engaged Compton Realtors to sell the property, and Dennis Clark and Duffy Better Homes and Gardens, by virtue of the Agency Disclosure Statement provided to and signed in acknowledgement by the plaintiffs and Fuson prior to the plaintiffs' execution of the purchase agreement, functioned as agents for Fuson.[1] In the absence of evidence that Compton Realtors, Thomas Compton, Doug Compton, Duffy Better Homes and Gardens and Clark were operating outside the scope of their authority, their acts and representations must be said to constitute the acts and representations of Fuson. See *Foust v. Valleybrook Realty Co.* (1981), 4 Ohio App.3d 164, 4 OBR 264, 446 N.E.2d 1122; see, also, *Integon Indemn. Corp. v. Hamilton Cty. Bd. of Health* (Mar. 20, 1991), Hamilton App. No. C–900122, unreported, 1991 WL 36534 (the act of an agent constitutes the act of his principal within the course of an employment when an act can fairly and reasonably be deemed an ordinary and natural incident or attribute of the service to be rendered).

■ We further note that the status of Thomas Compton, Doug Compton, Compton Realtors, Clark and Duffy Better Homes and Gardens as agents of Fuson does not relieve them of personal liability for fraud. The plaintiffs' claim sounds not in contract, but in tort. A tort victim is entitled to recover from the agent as well as the principal for fraudulent misstatements made by the agent in the course of his employment. *Stuart v. Natl. Indemn. Co.* (1982), 7 Ohio App.3d 63, 7 OBR 76, 454 N.E.2d 158; *Foust, supra.*

---

1. By the terms of the Exclusive Right To Sell agreement, Fuson employed Compton Realtors as her "exclusive agent" and authorized the "disclos[ure of] all information pertaining to the Real Estate to all parties involved with its marketing and/or sale." Pursuant to the Agency Disclosure Statement, Fuson acknowledged and agreed that Duffy Better Homes and Gardens, as the "Selling Broker," and Dennis A. Clark, as the "Selling Agent," represented Fuson, the "Owner" of the property, and not the plaintiffs.

■ Turning to the elements of the plaintiffs' claim, we find uncontroverted evidence that Fuson's property was initially listed, advertised and represented as a two-family residence upon a good-faith belief that a subsequent purchaser could continue that use. The evidence is contradictory, however, on the issue of whether Elliot's telephone conversations with the Comptons and Fuson and Thomas Compton's subsequent conversation with Clark disabused them of that notion. Construing the evidence most strongly in favor of the plaintiffs, and thus accepting Elliot's statement of the substance of his conversations with the Comptons and Fuson and Thomas Compton's statement of his conversation with Clark, we find evidence of affirmative misrepresentations attributable to Fuson when the Comptons and Compton Realtors continued to advertise the property as a two-family residence and when Clark showed the property to the plaintiffs as a two-family residence, and evidence of concealment of a fact when subsequently acquired information regarding zoning restrictions gave rise to a duty on the part of Fuson and her agents to disclose. See *Miles v. McSwegin* (1979), 58 Ohio St.2d 97, 12 O.O.3d 108, 388 N.E.2d 1367.

■ The evidence presented below is also supportive of the plaintiffs' allegations that the representation that this property was an income-producing, two-family dwelling was material to the plaintiffs' decision to purchase the property and was made with knowledge of its falsity and with an intent to induce reliance, and that the plaintiffs' reliance on the representation caused them to suffer economic harm. The defendants assert, however, that the plaintiffs' claim fails on the fourth element because, under the doctrine of *caveat emptor*, the plaintiffs had no right to rely on the representation. We are unpersuaded.

The Ohio Supreme Court in *Traverse v. Long* (1956), 165 Ohio St. 249, 59 O.O. 325, 135 N.E.2d 256, expressed the doctrine of *caveat emptor* as follows:

"*[C]aveat emptor* applies to sales of real estate relative to conditions open to observation. Where those conditions are discoverable and the purchaser has the opportunity for investigation and determination without concealment or hindrance by the vendor, the purchaser has no just cause for complaint even though there are misstatements and misrepresentations by the vendor not so reprehensible in nature as to constitute fraud. * * * " *Id.* at 252, 59 O.O. at 326–327, 135 N.E.2d at 259.

■ In *Layman v. Binns* (1988), 35 Ohio St.3d 176, 519 N.E.2d 642, the Supreme Court affirmed the continued vitality of the doctrine of *caveat emptor* to the law governing real estate sales. The court found that the doctrine imposes upon a purchaser of real estate a "duty * * * to make inquiry and examination" and relieves the seller of the "oblig[ation] to reveal all that he or she knows." *Id.* at 177, 519 N.E.2d at 644. The court noted, however, that over time, yet consistent with the language of the doctrine as articulated in *Traverse, supra*, the

doctrine of *caveat emptor* has been subjected to the following conditions: "(1) the defect must be open to observation or discoverable on reasonable inspection, (2) the purchaser must have an unimpeded opportunity to examine the property and (3) the vendor may not engage in fraud." *Layman, supra,* at 177, 519 N.E.2d at 644; see, also, *Sanfillipo, supra,* 24 Ohio App.3d at 167, 24 OBR at 256–257, 493 N.E.2d at 995. Therefore, in addition to imposing upon a purchaser of real estate a duty of inquiry and examination, the doctrine imposes on the seller a duty to allow the purchaser an unimpeded opportunity to examine the property and a duty to disclose material facts that are not readily observable or discoverable upon reasonable inspection. *Layman, supra; Uihlein v. Lauch* (Jan. 29, 1992), Hamilton App. No. C–900907, unreported, 1992 WL 14329 (citing *Miles, supra* ). Further, the doctrine cannot be invoked to shield from liability a seller of real estate who has engaged in fraud. *Layman, supra; Cooper v. Singleton* (May 2, 1984), Hamilton App. No. C–830434, unreported, 1984 WL 7959.

The doctrine of *caveat emptor,* in defining the duties of the parties to a real estate transaction, is relevant to a determination of whether the seller's failure to disclose a material fact may be made actionable by a duty to disclose. See *Layman, supra; Uihlein, supra* (the seller's nondisclosure did not constitute fraud when the defect was not latent and, therefore, under *caveat emptor,* the seller had no duty to disclose). In *Sanfillipo, supra,* and *Noth v. Wynn* (1988), 59 Ohio App.3d 65, 571 N.E.2d 446, we suggested, as the defendants here urge, that the doctrine of *caveat emptor* might also be employed to disprove the justifiable-reliance element of a claim for fraudulent inducement to purchase real estate. See *Noth, supra,* at 67, 571 N.E.2d at 448 (*caveat emptor* barred the purchaser's claim for fraudulent inducement to purchase real estate because the purchaser was not entitled to rely on the seller's knowing and material misrepresentations regarding matters of public record); *Sanfillipo, supra,* 24 Ohio App.3d at 167, 24 OBR at 256–257, 493 N.E.2d at 994–995 (*caveat emptor* did not preclude the purchaser's reliance on the seller's misrepresentations when the misrepresentations were made in direct response to the purchaser's inquiry and the matter was not readily apparent upon visual inspection). Elucidation of the doctrine by the Supreme Court in *Layman, supra,* reveals the circularity of this approach.

As we noted *supra,* consistent with the concluding clause of the doctrine as stated in *Traverse, supra,* the court in *Layman* held that a seller seeking to invoke the doctrine of *caveat emptor* cannot have engaged in fraud. Thus, the doctrine will not operate to shield a seller from liability upon satisfaction of the first three elements of a claim for fraudulent inducement to purchase real estate, *i.e.,* in the presence of a seller's material misrepresentation, made knowingly and with intent to mislead the purchaser. See *Tuckerman v. Doles* (June 13, 1990),

Montgomery App. No. 11926, unreported, 1990 WL 80583 (a purchaser is entitled to rely on the affirmative representations of the perpetrator of a fraud and need not prove justifiable reliance if the representation is reasonable on its face); *Foust, supra* (*caveat emptor* did not bar the purchaser's fraud claim because the purchaser's duty of inspection terminated upon the seller's knowing and material misrepresentations in response to the purchaser's inquiry).

Although the seller's fraud vitiates the duty of inspection imposed on a purchaser for purposes of the doctrine of *caveat emptor*, the purchaser still bears the burden of proving in support of his fraud claim that his reliance was justified. The question of justifiable reliance is one of fact and requires an inquiry into the relationship between the parties. *Mussivand, supra; Tuckerman, supra.* A purchaser's reliance on a seller's fraudulent representation may be said to be justified if the representation does not appear unreasonable on its face, see *Tuckerman, supra*, and if, under the circumstances, the purchaser has no apparent reason to doubt the veracity of the representation. *Gaines, supra; Jenkins v. Gulley* (Dec. 23, 1991), Preble App. No. CA91–03–004, unreported, 1991 WL 274316; *Foust, supra.*

Applying these principles to the instant case, we find that the representation that the property could be used as a two-family residence was not unreasonable in light of the structure's configuration and the presence of the second-floor tenant, revealed in the course of the plaintiffs' examination of the property. The zoning restrictions to which the property was subject would not have been revealed through a title search, compare *Noth, supra* (the purchaser had no right to rely on misrepresentations regarding property boundaries and title restrictions that would have been revealed in a title search), and, as we held in *Niehaus v. Haven Park West, Inc.* (1981), 2 Ohio App.3d 24, 2 OBR 26, 440 N.E.2d 584, the failure of a purchaser of real estate to examine public records does not, as a matter of law, preclude an action for fraud against a seller who has made misrepresentations regarding zoning. Accord *Sanfillipo, supra*, 24 Ohio App.3d at 167, 24 OBR at 256–257, 493 N.E.2d at 995. Compare *Noth, supra.* Based upon the evidence before us, we find that the representation concerning the two-family use of the property was not unreasonable on its face and that nothing in the surrounding circumstances cast doubt upon its veracity. We are, therefore, unable to conclude, as a matter of law, that the plaintiffs' reliance on the representation was unjustified.

Upon our determination that genuine issues of material fact remain for trial, we hold that summary judgment was improvidently entered for the defendants. Accordingly, we sustain the plaintiffs' three assignments of error, reverse

the judgment entered below and remand for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

SHANNON, P.J., UTZ and GORMAN, JJ., concur.