**[Cite as *Turtutici Family Trust v. Carey*, 2012-Ohio-6191.]**

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

JACK TURTURICI FAMILY TRUST, etc.       :

      Plaintiffs-Appellants       :             C.A. CASE NO.    2012 CA 8

v.                                     :             T.C. NO.    08-1057

ERIC M. CAREY, et al.                  :             (Civil appeal from
                                                      Common Pleas Court)

      Defendants-Appellees        :

                                                 :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the     28th     day of     December    , 2012.

. . . . . . . . . .

JAMES I. WEPRIN, Atty. Reg. No. 0007085, 109 North Main Street, 500 Performance Place, Dayton, Ohio 45402
        Attorney for Plaintiffs-Appellants

ALAN A. BIEGEL, Atty. Reg. No. 0006139, 5975 Kentshire Drive, Kettering, Ohio 45440
        Attorney for Defendants-Appellees Daniel Bagi and Real Living Realty Services, Inc.

JOSHUA A. KOLTAK, Atty. Reg. No. 0078164 and MICHAEL A. STAUDT, Atty. Reg. No. 0011020, Courtview Center, Suite 300, 100 South Main Avenue, Sidney, Ohio 45365
        Attorneys for Defendants-Appellees Eric M. Carey and Kimberly L. Carey, and Lostcreek Leasing Company

. . . . . . . . . .

FROELICH, J.

{¶ 1}   Plaintiff-Appellant, the Jack Turturici Family Trust ("Family Trust"), appeals from a trial court decision concluding that the Family Trust failed to prove justifiable reliance on the misrepresentations of the Defendants-Appellees, and, therefore, failed to prove fraud.

{¶ 2}   For the reasons discussed below, the trial court's judgment will be affirmed.

I.   Course of Proceedings

{¶ 3}   This case involves a real property dispute that is before our court for the second time.   After a bench trial held in March 2010, the trial court issued a decision making the following findings: (1) in favor of Defendants, Daniel Bagi and Real Living Realty Services, Inc., on the Family Trust's claims of fraudulent misrepresentation and fraudulent nondisclosure; (2) in favor of Defendant Lostcreek Leasing Company ("Lostcreek") in the amount of $53,000, plus interest, on a counterclaim against the Family Trust for failure to pay a promissory note in connection with the purchase of 701 N. Market Street, Troy, Ohio; (3) in favor of the Family Trust and against Lostcreek for $29,015 for breach of contract regarding a drainage issue relating to 701 N. Market St., Troy, Ohio; and (4) in favor of the Family Trust on Lostcreek's claim for breach of contract with respect to the Family Trust's failure to complete the purchase of property located at 703 N. Market St., Troy, Ohio. See *Jack Turturici Family Trust v. Carey*, 196 Ohio App.3d 66, 2011-Ohio-4194, 962 N.E.2d 347, ¶ 18 (2d Dist.).   The trial court, therefore, rendered a net judgment in favor of Lostcreek in the amount of $23,895, plus interest.   *Id*. at ¶ 19.

{¶ 4}    The trial court subsequently issued a judgment entry in September 2010, granting Lostcreek's claim to foreclose the equity of redemption of all defendants with an interest in the real estate, and ordering the property at 701 N. Market St. to be foreclosed. In October 2010, the trial court filed a decree for judgment, foreclosure, and sale, ordering that the property be sold, that any delinquent real estate taxes be paid, and that Lostcreek be paid its judgment. In addition, the court ordered that the Family Trust should receive any remaining proceeds from the sale.   The court noted in its judgment that the Eaton National Bank had been served with a third-party complaint for foreclosure, but had failed to file an answer or appear for trial.   Doc. #106.

{¶ 5}    In November 2010, the Family Trust filed a notice of appeal from the October 2010 judgment.   A notice of cross-appeal was then filed by the Careys and Lostcreek.   The Family Trust presented four assignments of error, only three of which are relevant to the issues before us.   The first two assignments of error were based on the trial court's alleged error in applying the law with respect to misrepresentation and fraudulent non-disclosure.   We concluded that the trial court erred in finding that the defendants had not made a material misrepresentation. *Jack Turturici Family Trust* at ¶ 41.   Because the parties disagreed about whether the remaining elements of fraud had been established, we remanded the matter so that the trial court could decide this issue. *Id*.

{¶ 6}    We declined to reach the merits of the third assignment of error, which challenged the judgment on Lostcreek's counterclaim for breach of contract, foreclosure, and personal guaranty on the note signed by Mr. and Mrs. Turturici.   *Id*. at ¶ 43.   We concluded that it would be premature to find that the mortgage and promissory note were procured by

fraud until the trial court made a finding on the remaining elements of the fraud claim. *Id.*

{¶ 7} Finally, we rejected the two assignments of error raised in the cross-appeal. We held that there was competent, credible evidence supporting the finding that Lostcreek breached its contract with the Family Trust. *Jack Turturici Family Trust,* 2011-Ohio-4194, at ¶ 67. We also concluded that the award of damages for Lostcreek's breach of contract was not against the manifest weight of the evidence. *Id.* at ¶ 77. Accordingly, we affirmed the judgment in part and reversed it in part, and remanded the matter for further proceedings. *Id.* at ¶ 78. Notably, no stay had been requested, and the property had already been sold at sheriff's sale prior to the issuance of our opinion. *Id.* at ¶ 19.

{¶ 8} On remand, the trial court permitted the parties to file briefs on the issue remanded. The court then filed an entry concluding that the Family Trust failed to establish that it justifiably relied on the misrepresentations, and, therefore, failed to prove the elements of fraud. The Family Trust appeals from the trial court's entry.

## II. Factual Background

{¶ 9} The factual background of this case is recited in our prior opinion, at ¶ 1-17. Without repeating the entirety of that discussion, we note that Jack Turturici has been self-employed as a real estate broker since 1987, is licensed in California and Nevada, and specializes in commercial real estate investment. At the time of the transaction involved in this case, Turturici owned about nine commercial properties, plus two homes, all of which were held by the Turturici Family Trust. Turturici was also a premium member of Loopnet, which gave him access to nationwide listings for commercial properties. Turturici saw an

advertisement on Loopnet for commercial property located at 701 N. Market Street in Troy, Ohio, and became interested because of the "cap rate" of 9%, which was an enticing rate. Cap rates are based on the flow of income before debt service, so a 9% cap rate on a $500,000 property would mean a return of $45,000 in income annually before debt service must be paid. The Loopnet ad stated that the actual annual net operating income from the property was $44,812. At the time the listing agent, Daniel Bagi, placed the ad, he did not know that the tenant was behind or delinquent in rent.

{¶ 10} After seeing the ad, Turturici called Bagi to ask about the property. There is a dispute about what occurred during this conversation. Turturici testified that Bagi told him that the tenant was paying rent to equate to the figure in the ad. In contrast, Bagi testified that Turturici asked if the tenant was paying rent, and he said he had no idea, as that was between the landlord and tenant. Shortly after the telephone conversation, Bagi sent Turturici a copy of the lease, which showed an agreement for $3,800 in monthly rent, through March 2010.

{¶ 11} In early May 2008, Turturici prepared a California purchase contract and sent it to Bagi, who converted it to an Ohio purchase contract. Both parties signed the contract, which called for a purchase price of $451,000 and contained various contingencies, including the requirement that the buyer would have thirty days to inspect leases, rent rolls, and financial data supplied by the seller, and including the buyer's ability to obtain financing.

{¶ 12} On May 14, 2008, Turturici flew to Ohio to inspect the property. He met with Bagi, and with Eric Carey, one of the members of Lostcreek, which owned the property.

Turturici was introduced as the new buyer to the tenant, Ruth Alrick. Turturici had an opportunity to talk with Alrick and could have questioned her about the rent, but he did not talk with her, as she appeared to be busy. In response to Turturici's inquiry about whether Alrick was a good tenant, either Carey or Bagi said yes. At the time, Alrick was about $13,263 in arrears on her rent, but that fact was not disclosed to Turturici.

{¶ 13} Bagi learned on the day of the inspection that Alrick was in arrears on her rent, but he failed to disclose that to Turturici. At this time, Carey asked Bagi if they needed to provide rent rolls and payment history if Turturici did not request it. Bagi told the Careys that if Turturici did not ask for the information, they did not have to disclose it.

{¶ 14} At the beginning of July 2008, Bagi sent Turturici Internal Revenue Service 8825 forms for the property for 2005 and 2006. These forms showed gross rents and expenses for the property during those years, plus estimated expenses for 2007. The forms indicated receipt of $44, 237 in rental income for 2005 and 2006, and estimated rental income of $50,640 in July 2007. Also in July 2008, Bagi confirmed to Turturici's lender (the Eaton National Bank) that the property's monthly rent was $3,800.

{¶ 15} The scheduled closing date for the property was August 15, 2008. In mid-July 2008, Eric and Kimberly Carey, the property owners, had a meeting with Bagi in his office. They discussed the rent situation, and asked Bagi if they should disclose it to Turturici. Both Careys testified that Bagi told them that if the rent information were disclosed, it "could kill the deal."

{¶ 16} Turturici never asked for the rent rolls, nor did he contact the tenant to make sure that rent was being paid. Turturici also never obtained an assignment of the

Alrick's lease to the Family Trust. According to Bagi, Turturici was interested in finding another tenant and talked to Bagi about that even before he toured the property. Turturici felt that Alrick was paying far less than market value for the property, and he was also aware that Alrick was willing to leave the lease upon receiving only a ten-day notice.

{¶ 17} Bagi testified that Turtruici called him in early summer 2008, to say that he wanted Bagi to be his listing agent for the lease listing. According to Bagi, Turturici said he wanted Bagi to look for a new tenant, but not to tell Eric Carey he was doing it, because if Bagi found a new tenant, Carey might not want to sell the property.

{¶ 18} Around August 3 or 4, 2008, the Careys also received a letter from the City of Troy regarding a water drainage issue on the property. The parking lot flooded periodically during rainstorms, and water intruded four or five times a year onto neighboring property owned by Claude Miller. Miller had discussed this matter with Eric Carey a number of times, including once in the summer of 2008, and had also complained to the City. Information about this issue was also not disclosed to Turturici.

{¶ 19} In August 2008, prior to the closing, the Careys knew that Alrick owed them more than $20,000 for rent and other amounts due under the lease. Eric Carey told Alrick they would be willing to accept a promissory note to pay off the balance, so Alrick signed a note for approximately $20,600. An issue came up at the time of closing regarding the fact that no August rent had been included in the proration. When Turturici inquired about it, he was told that the first part of the rent had been paid prior to closing and that the Family Trust would receive the balance of the August rent from the tenant. In addition, a question arose about the security deposit. Turturici was told that the security deposit

consisted of a promissory note from Alrick, and that there was no cash attributable to the security deposit. Turturici was not told that Alrick had signed the $20,000 promissory note for past-due rent. Despite knowing these facts about the lack of rent at closing and the questionable security deposit, Turturici went ahead with the closing.

{¶ 20} After the transaction closed, Alrick paid only a few thousand dollars total in rent to the Family Trust, and did not pay thereafter. Turturici then learned about the past rent problems. He also found out in October 2008, about the issues with the drainage. Turturici filed suit against the Careys, Lostcreek, Bagi, and Real Living Realty Services in December 2008. The procedural history thereafter is as related above, including the trial court's decision on remand in 2011.

## II. Alleged Application of Irrelevant Factors to Justifiable Reliance

{¶ 21} In its first assignment of error, the Family Trust contends that "[t]he trial court applied irrelevant factors to the justifiable reliance analysis." To support this contention, the Family Trust argues that a number of the trial court's findings are relevant to the issue of the materiality of the misrepresentations, but are not pertinent to the issue of whether the Family Trust justifiably relied on the statements. In this regard, the Family Trust focuses on Turturici's alleged interest in a new tenant, Turturici's failure to have the lease assigned to the trust, Turturici's instruction that the seller's agent should not disclose leasing attempts to the sellers, and Turturici's awareness that the tenants were willing to break the lease. The Family Trust argues that these matters pertain to motive, and perhaps to whether the misrepresentations were material, but are not relevant to the issue of

justifiable reliance.

**{¶ 22}** The elements of fraud include:

(1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance. *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 27, citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986).

**{¶ 23}** The misrepresentations in this case involve the failure of the sellers' real estate agent to inform the Family Trust of the fact that a 9% cap rate for the commercial property was a false, inflated rate, once the agent discovered this fact. The Careys and their agent also failed to tell either the Family Trust or the bank that the tenant was behind in rent payments. The trial court concluded that these failures were material misrepresentations, but that the Family Trust did not justifiably rely on them.

**{¶ 24}** In finding that the Family Trust's reliance on representations about the tenant's rent was not justifiable, the trial court focused on the following facts: (1) Jack Turturici met the tenant prior to closing and had the opportunity to ask her directly if she were current on rent, but inexplicably failed to do so; (2) Bagi's indirect answer about payment of rent should have raised a "red flag" with an experienced real estate broker like Turturici; (3) Turturici wanted to find another tenant, never asked to have the lease assigned

to him, and never asked for rent rolls; (4) Turturici wanted Bagi to enter into a listing agreement with him before the closing, and told Bagi not to disclose this to the sellers, because the sellers might change their minds about selling if a better tenant were found; (5) Turturici knew the tenant was paying rent in cash and third-party checks, which suggested the tenant was living from client to client or trying to avoid paying taxes; (6) the lease security deposit was a note; and (7) the tenant's business was dog grooming, which would have alerted a careful purchaser, let alone a seasoned commercial real estate investor, to investigate further.

{¶ 25} The Family Trust argues that the representations regarding the rent were reasonable on their face and that Turturici had no reason to doubt their truth. As support for this proposition, the Family Trust relies on *Lepera v. Fuson,* 83 Ohio App.3d 17, 26, 613 N.E.2d 1060 (1st Dist. 1992), in which the court stated that:

> Although the seller's fraud vitiates the duty of inspection imposed on a purchaser for purposes of the doctrine of caveat emptor, the purchaser still bears the burden of proving in support of his fraud claim that his reliance was justified. The question of justifiable reliance is one of fact and requires an inquiry into the relationship between the parties. A purchaser's reliance on a seller's fraudulent representation may be said to be justified if the representation does not appear unreasonable on its face, * * * and if, under the circumstances, the purchaser has no apparent reason to doubt the veracity of the representation. (Citations omitted.)

{¶ 26} We do not disagree with this statement of law. The trial court concluded, consistent with this statement, that there were sufficient reasons to doubt the veracity of the

seller's representations. While some items that the court considered do relate to Turturici's motives, these facts are not irrelevant to whether Turturici justifiably relied on the seller's representations. In addition, most of the factors cited by the trial court do bear on the issue of whether the reliance was reasonable.

{¶ 27} The First Assignment of Error is overruled.

### III. Alleged Failure to Address Relevant Factors for Justifiable Reliance

{¶ 28} The second assignment of error states that "[t]he trial court failed to address relevant factors for the justifiable reliance analysis." In this regard, the Family Trust relies on cases which have held that purchasers are entitled to rely on sellers' representations that tenants are "good renters," or upon representations as to income and profits, without incurring a heightened duty to investigate.

{¶ 29} For example, in *Rapport v. Kochovski,* 185 Ohio App.3d 309, 2009-Ohio-6880, 923 N.E.2d 1212 (5th Dist.), the court of appeals affirmed a judgment in favor of a buyer, where the seller misrepresented the amount of rental income of the property, and also told the buyer that the tenants were "good tenants," when, in fact, they were not. *Id.* at ¶ 17-18 and 26. A review of the case, however, indicates that the trial court failed to find the seller credible, and the appellate court agreed. *Id.* at ¶ 21-22 and 30. The court's discussion of reliance is also not detailed. *Id.* at ¶ 26-30. And finally, there is no evidence that the buyer in *Rapport* was experienced in commercial real estate, or that "red flags" were raised by the conduct of the seller. Therefore, *Rapport* is distinguishable from the case at hand.

{¶ 30} The second case that the Family Trust relies on is *Nelson v. Buck*, 2d Dist. No.

1623, 1927 WL 2739, * 1 (Nov. 10, 1927), a very early decision issued at a time when the Second District Court of Appeals included Franklin County. In *Nelson*, the Second District Court of Appeals did state that:

> The evidence as to the cost of the business block was competent, as it naturally tended to establish the value. It was a representation of fact upon which the buyer had a right to rely. So also the question of rentals was a question of fact and, there being evidence tending to prove misrepresentations in respect thereto, the misrepresentations were of fact, upon which the purchaser had a right to rely. Id. at * 1.

{¶ 31} *Nelson* is a very brief decision, and does not discuss the elements of fraud. In addition, the issue of reliance was not the question before the court – the issue under consideration was alleged error in inconsistent jury charges on the measure of damages. *Id.* Therefore, *Nelson* does not offer guidance on the issue of justifiable reliance.

{¶ 32} In the final case cited by the Family Trust, a buyer of an apartment building testified that he relied solely on the representations of the owners (who were also two of the tenants) as to the fact that the property was being rented for its legal maximum rent. The purchaser, therefore, made no inquiry to determine the true facts. *Steiner v. Roberts*, 72 Ohio Law Abs. 39, 1131 N.E.2d 238, 239 (8th Dist. 1955). The court of appeals concluded that the buyer was not required to investigate and was entitled to rely on the representation. *Id*. at 243.

{¶ 33} Again, absent from the factual background of the case is any indication that the purchaser was a commercial real estate agent, was versed in commercial transactions, and most importantly, that the transaction contained factors that would alert a purchaser of the need to investigate further. Accordingly, these cases provide no basis for concluding that the trial court

erred in applying applicable law. Buyers are entitled to rely on factual misrepresentations, but one element of fraud is that the reliance must be justifiable – a factor not discussed in the cases.

{¶ 34}    *Amerifirst Savings Bank of Xenia v. Krug*,136 Ohio App.3d 468, 737 N.E.2d 68 (2d Dist.1999) is a more recent case, particularly compared to *Nelson*. In *Amerifirst*, we made the following comments about reliance:

Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances. *Lepera v. Fuson* (1992), 83 Ohio App.3d 17, 26, 613 N.E.2d 1060, 1065–1066. However, there must be a balance between reliance and responsibility:

"The rule of law is one of policy and its purpose is, while suppressing fraud on the one hand, not to encourage negligence and inattention to one's own interests. There would seem to be no doubt that while in ordinary business transactions, individuals are expected to exercise reasonable prudence and not to rely upon others with whom they deal to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple-minded or unwary." (Citations omitted.)   50 Ohio Jurisprudence 3d (1984), Fraud and Deceit, Section 132.

With these limitations in mind, we agree with Amerifirst's interpretation of the Supreme Court's definition of justifiable reliance, as contrasted to reasonable reliance, in *Field v. Mans* (1995), 516 U.S. 59, 70–71, 116 S.Ct. 437, 444, 133 L.Ed.2d 351, 362:

"Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man.

Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Restatement of the Law, Torts (1976), Section 545A, Comment b. *Amerifirst* at 495-496.

**{¶ 35}** In the case before us, the trial court's analysis took the qualities and characteristics of the particular plaintiff into consideration, and the court did not fail to address relevant factors. Accordingly, the second assignment of error is overruled.

IV. Alleged Imposition of Duty to Investigate

**{¶ 36}** The Family Trust's third assignment of error states that "[t]he trial court erred by imposing a duty on Appellants to investigate." This assignment of error basically repeats arguments previously made, and additionally challenges the trial court's factual conclusions about fraud as being unsupported by the manifest weight of the evidence.

**{¶ 37}** "The elements of fraud must be established by clear and convincing evidence. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Trepp, L.L.C. v. Lighthouse Commercial Mtge, Inc.*, 10th Dist. Franklin Nos. 09AP-597, 09AP-850, 2010-Ohio-1820, ¶ 20, citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). The party alleging fraud has the burden of proof. *Id*.

**{¶ 38}** Family Trust's claims were tried to the court, which was the finder-of-fact. In reviewing judgments under a manifest weight analysis, a reviewing court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines

whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " (Citations omitted.) *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.   The Supreme Court of Ohio further stressed in *Eastley* that:

> In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact.
>
> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * ["]
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."   *Id.* at ¶ 21, quoting from *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, which, in turn, quotes from 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶ 39}   This presumption in favor of the trial court's judgment is consistent with the well-established view that "[t]he 'rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' "   *In re J.Y.*, 2d. Dist. Miami No. 07-CA-35, 2008-Ohio-3485, ¶ 33, quoting from *Seasons Coal Co., Inc.,* 10 Ohio St.3d at 80.

{¶ 40}   Applying these standards to the case before us, we cannot conclude that the

judgment is against the manifest weight of the evidence. The trial court's decision was based on its findings regarding witness credibility, and the court did not lose its way and create a manifest miscarriage of justice.

{¶ 41} Before addressing the remaining assignments of error, we note that in subsection "C", at p. 13 of Family Trust's brief, the Family Trust argues that the trial court's decision should be reversed because the court failed to address the issue of misrepresentations about water problems. This subsection follows the third assignment of error, and is not appended to any particular assignment of error. In this part of the brief, the Family Trust acknowledges that our prior decision affirmed damages for amounts required to correct the flooding issue. The Family Trust contends, however, that additional remedies are available for fraud beyond was what already awarded, including recission of the mortgage agreement and promissory note.

{¶ 42} Our prior opinion affirmed the trial court with regard to its findings against Lostcreek on the Family Trust's claim for breach of contract. The trial court originally concluded that the "fact that water collected in the storm water retention basin two to four times per year is not a latent defect. It was an open and obvious condition and the Plaintiff had unimpeded opportunity to examine it and have an inspection of it, or ask any questions about it." Doc. #100, p. 5. The court further concluded that Lostcreek should have disclosed the fact that some excess water drains onto the adjoining property, and should have disclosed the letter that was received from the City of Troy prior to the closing. The trial court, therefore, awarded the Family Trust $29,015 as the amount, according to the Trust's expert, that was required to fix the problem.

{¶ 43} We agreed with the trial court that Lostcreek should have disclosed these

matters, and further agreed that the correct measure of damages was the cost of repair. We, therefore, found no error in this part of the judgment and affirmed the award. *Jack Turturici Family Trust*, 196 Ohio App.3d 66,   2011-Ohio-4194, 962 N.E.2d 347, at ¶ 52-78.

{¶ 44}    Our opinion did not instruct the trial court to consider on remand whether fraud had occurred with regard to the water problem.   In fact, in the context of the claim for fraud, our opinion only discussed the misrepresentations regarding the rent. *See, id.* at ¶ 20-41. It was also in this context that we declined to address the assignment of error pertaining to whether the mortgage and promissory note were secured by fraud. *Id.* at ¶42-44. The Family Trust did not file a motion for reconsideration of our opinion, to point out any alleged error.   Instead, the Family Trust elected to let the judgment stand with regard to the award of damages it had received for breach of contract.

{¶ 45}    On remand, the trial court permitted the parties to file supplemental briefs.   The Family Trust did raise the water issue in the context of fraud in its supplemental brief, but the trial court considered fraud only with respect to the rent issues.   This was what was dictated by our remand.

{¶ 46}    "[U]pon remand from an appellate court the lower court is required to proceed from the point at which the error occurred." *Armstrong v. Marathon Oil Co.,* 32 Ohio St.3d 397, 418, 513 N.E.2d 776 (1987).   Thus, if we had reversed the entire judgment, the trial court would have been required to reconsider all matters joined at trial.   However, the reversal was only partial.

{¶ 47}    The doctrine of the law of the case "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent

proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan,* 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). This doctrine "is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." *Id.* "However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Id.*

**{¶ 48}** In *Nolan*, the Supreme Court of Ohio stressed that:

In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. Moreover, the trial court is without authority to extend or vary the mandate given. (Citations omitted.) *Id*. at 3-4.

**{¶ 49}** Our mandate was that the trial court should consider the remaining elements of fraud in the context of the failure to disclose pertinent information about the rental payments. The trial court properly followed our mandate, and would not have been authorized to consider issues regarding the water problem, particularly since that matter had been resolved through an award of damages.

**{¶ 50}** "It has been cited as an elementary rule of contracts that when a material breach occurs, the nonbreaching party 'may, at his option, elect to rescind the contract, or continue it in force and sue for damages for the breach.' " *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670, 950 N.E.2d 1027, ¶ 32 (10th Dist.). "Rescission is an alternate remedy to

legal damages." *MacDonald v. Edwards,* 8th Dist. Cuyahoga Nos. 72698, 72768, 1998 WL 382176, * 7 (July 9, 1998).

**{¶ 51}** At trial, the Family Trust presented evidence of the cost to repair the drainage issue, was awarded that amount, and elected not to file a motion for reconsideration of our opinion. The Family Trust also did not appeal our decision to the Ohio Supreme Court. As a result, the trial court did not err in failing to consider alleged misrepresentations relating to the water problem.

**{¶ 52}** The remainder of the points under the third assignment of error have been previously addressed and will not be further considered. The trial court did not conclude that the Family Trust had a duty to investigate or had any type of heightened duty; the court concluded that reliance on the assertions of the sellers was not justified in view of the qualities and circumstances of the particular purchaser. Accordingly, the third assignment of error is overruled.

### V. Alleged Failure to Address Fraud Relating to Water Problems.

**{¶ 53}** The Family Trust's fourth assignment of error states that "[t]he trial court erred by failing to address the fraud claims relating to the water problems on remand."

**{¶ 54}** We have already addressed this issue. For the reasons previously outlined, the fourth assignment of error is overruled.

### VI. Alleged Error in Granting the Counterclaim
### for Breach of Contract and Foreclosure

**{¶ 55}**   The Family Trust's Fifth Assignment of Error states that: "[t]he trial court erred by granting Lostcreek's counterclaim for breach of contract and foreclosure."   Under this assignment of error, the Family Trust contends that the trial court failed to consider the equities when it granted Lostcreek's counterclaim on its promissory note and granted the foreclosure judgment.   According to the Family Trust, the trial court should have considered the multiple fraudulent disclosures and the fact that Lostcreek failed to demonstrate good faith in its dealings.

**{¶ 56}**   The trial court's decision indicates that the court did weigh the dealings of the parties, and specifically noted that "skullduggery abounds."   Doc. # 132, p. 4.   We find no error in the court's decision.

**{¶ 57}**   The fifth assignment of error is overruled.


## VI.

**{¶ 58}**   The judgment of the trial court will be affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.


Copies mailed to:

James I. Weprin
Alan A. Biegel
Joshua A. Koltak
Michael A. Staudt
Hon. Robert J. Lindeman